924 P.2d 544

**BANK OF HAWAII, a Hawai'i corporation, Plaintiff–Appellee,**

v.

**Stephen M. SHAW, Defendant–Appellant.**

**No. 16787.**

Intermediate Court of Appeals of Hawai'i.

Jan. 4, 1996.

Reconsideration Granted Jan. 22, 1996.

Opinion on Grant of Reconsideration Sept. 25, 1996.

Certiorari Denied Oct. 14, 1996.

As Amended Dec. 11, 1996.

51

52

Stephen M. Shaw, Honolulu, defendant-appellant pro se on briefs.

Michael C. Webb and Susan Cachero Sakai (Michael C. Webb, of counsel), on the brief, for plaintiff-appellee.

Before ACOBA, J., and TOWN, Circuit Judge, in place of BURNS, C.J., Recused, and DEL ROSARIO, Circuit Judge, in place of WATANABE, J., Recused.

ACOBA, Judge.

On August 4, 1992, Plaintiff–Appellee Bank of Hawai'i (BOH), a Hawai'i corporation, filed a complaint in the district court against Defendant–Appellant Stephen M. Shaw (Shaw) after failed attempts to collect over $5,000 in delinquent credit card bills from Shaw. Shaw, an attorney, represented himself in the proceedings. After a bench trial on November 13, 1992, the district court rendered judgment for BOH on its complaint and against Shaw as to all of Shaw's counter-claims against BOH. Judgment was entered on November 19, 1992 and December 2, 1992, and Shaw filed a timely notice of appeal on December 16, 1992. We affirm.

## I.

Shaw's appeal asserts numerous grounds but fails to provide discernible argument or discussion on many of the points. We will disregard a point of error if the appellant fails to present discernible argument on the alleged error. *Hall v. State,* 10 Haw.App. 210, 218, 863 P.2d 344, 348, *cert. denied,* 76 Hawai'i 246, 868 P.2d 464 (1993). We consider the identifiable arguments in Shaw's brief.

A.

First, Shaw contends that the district court erred in denying his jury trial demands.

Hawai'i District Court Rules of Civil Procedure (DCRCP) Rule 38(b) requires that a written demand for jury trial be served and filed "not later than 10 [ (ten) ] days after the case is at issue."

**(b) Demand.** *Any party may demand a trial by jury* of any issue triable of right by a jury *by serving upon the other parties a demand therefor in writing* at any time after the commencement of the action and *not later than 10 days after the case is at issue.* Upon such demand, the party demanding a jury trial shall pay to the clerk of the district court such costs for jury trial as are payable in the circuit court, and the case shall be transferred to the circuit court. The clerk shall prepare, certify and transmit all of the papers within 20 days after the filing of the demand.

(Emphases added.)

On August 17, 1992, Shaw and BOH appeared before the district court (the August 17, 1992 hearing). Shaw entered a general denial to BOH's complaint and indicated his intent to demand a jury trial.

MR. SHAW: I'd like to deny and reserve the question of jury trial [until] after pre-trial conference, if that's possible. Otherwise, I'd demand a jury trial today.

THE COURT: *It has to be done in ten days.* What's the amount of the complaint?

[BOH's Counsel]: It's about $5,700, exclusive of interests and costs.

THE COURT: And the jurisdictional amount?

[BOH's Counsel]: It'd—it would be over 5,000.

THE COURT: So, jury trial is demanded. It's committed to the circuit court.

[BOH's Counsel]: Thank you, Your Honor.

MR. SHAW: Thank you, Your Honor.

THE CLERK: *We'll continue four weeks for perfection of your jury demand.* Okay?

MR. SHAW: Thank you.

(Emphases added.) The official trial transcript concludes with a note stating "(WHEREUPON CASE WAS CONTINUED FOR FILING OF DEMAND TO 9/14/92)[.]"

The transcript of the August 17, 1992 hearing reflects that the court specifically informed Shaw that he was required to file his demand within ten days, a point Shaw concedes in his Reply Brief. After inquiring whether the amount was sufficient for circuit court jurisdiction, the district court judge confirmed, " 'So, jury trial is demanded. It [i]s committed to the circuit court.' " At the end of the hearing, the clerk told Shaw in open court " 'We [wi]ll continue four weeks [until September 14, 1992] for perfection of your jury demand.' "

Although the colloquy in court could have been more definitive, neither the court's statement nor the clerk's statement expanded the ten-day deadline of DCRCP Rule 38(b). The judge lacked the power to commit the case to circuit court without a written demand; therefore, the statement concerning commitment was at best an indication of what would happen if the proper demand was made. The court clerk's statement, " 'We [wi]ll continue for four weeks for perfection of your jury demand[,]' " could not mean that the time to file was extended, as Shaw maintains. The statement refers to Shaw's "perfection" of his jury demand, i.e. continuing the case for four weeks to allow Shaw time to "perfect" or to file his jury trial demand. This is the only reasonable interpretation of the proceedings.

For while the court had the power to extend the time to file the jury demand, the court clerk had no such power. DCRCP Rule 6(b)(1) permits the court to extend a deadline "for cause shown[.]" But Shaw made no request to extend the time, and the court did not indicate any "cause [was] shown" for such an extension.

By his general denial at the August 17, 1992 hearing, Shaw put the case "at issue." DCRCP Rule 38(b). Accordingly, under DCRCP Rule 38(b), Shaw was required to file his jury demand on August 27, 1992, no

later than ten days after the August 17, 1992 hearing. Shaw did not file any demand on August 27, 1992.

Finally, Shaw clearly understood that he had a ten-day deadline because he filed a subsequent motion pursuant to DCRCP Rule 6(b), requesting an extension of time to file the demand. *See* discussion *infra.*

### B.

On August 18, 1992, the day after the August 17, 1992 hearing, Shaw claimed to have spoken to a clerk, who told him he had fourteen days to file his demand for a jury trial, ostensibly an August 31, 1992 deadline. On August 31, 1992, Shaw filed his first jury demand along with a Motion to Extend Time to File Demand for Jury Trial; or, to Extend Time to Pay Costs for Jury Trial and Request for Settlement/Status Conference pursuant to DCRCP Rule 6 (Rule 6 Motion). DCRCP Rules 6(b)(1) and 6(b)(2) state in relevant part:

> **(b) Enlargement.** When by these rules ... or by order of court an act is required or allowed to be done at or within a specified time, *the court for cause shown may at any time in its discretion* (1) with or without motion or notice *order the period enlarged if request therefor is made before the expiration of the period originally prescribed* or as extended by a previous order or (2) *upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect* [.]

(Emphases added.)

Shaw requested that the court grant his Rule 6 Motion "on the grounds that the interests of justice would best be served thereby, and on the further ground that

1. As evidence of the settlement offer, Shaw attached two exhibits (Exhibits B and C) to the Rule 6 Motion. Exhibit B was a July 2, 1992 letter from BOH to Shaw, advising him to submit a repayment plan by July 9, 1992. Exhibit C was an August 27, 1992 faxed letter from Shaw to BOH, "accepting" the July 2, 1992 offer and payment plan proposal.

2. The record shows that an "Approved and So Ordered" stamp on the Rule 6 Motion was replaced by a handwritten "Denied" and a judge's signature.

[BOH] has accepted a settlement offer which might result in the dismissal of this lawsuit."[1] Shaw claims he relied on the clerk's August 18 representation that he had until August 31 to file his jury demand. But Shaw's contention that he had an August 31 deadline was inconsistent with the contemporaneous filing of his Rule 6 Motion requesting additional time to file the first jury demand. On August 31, 1992, the court denied the Rule 6 Motion and jury demand without a hearing or any stated grounds.[2]

### C.

On September 3, 1992, Shaw filed a second jury demand and paid a $100.00 filing fee.[3] Shaw maintains he filed this second demand after a clerk notified him that his Rule 6 Motion had been denied.

On the same date, BOH filed a memorandum opposing Shaw's Rule 6 Motion (which the court had already denied on August 31, 1992). BOH argued that since Shaw's motion was based on DCRCP Rule 6(b)(1) only, the motion should be denied because the request was not made prior to the expiration of the ten-day deadline. BOH also raised Rule 6(b)(2), contending that Shaw should be denied a post-deadline extension. BOH reasoned that Shaw's reliance on the clerk's representation that he had fourteen days to file his demand did not amount to "excusable neglect" because, as a licensed attorney, Shaw should be held to a higher standard, and was, accordingly, not entitled to rely on a court clerk for legal advice. BOH also argued that Shaw "seriously misrepresented to the Court" that he had accepted a settlement offer.[4] On September 3, 1992, the judge

3. Shaw alleges in his brief that the $100 filing fee has not been returned to him. If this allegation is accurate, the filing fee should be returned.

4. BOH maintained that its July 2, 1992 letter to Shaw was neither an offer nor an acceptance of an offer, but rather was an invitation to Shaw to propose a payment plan by July 9, 1992. Furthermore, BOH claimed that Shaw's August 27, 1992 faxed letter was an untimely response and did not constitute a settlement agreement.

denied Shaw's second jury demand as "untimely filed."

According to Shaw, he contacted a clerk on September 8, 1992 to ascertain the basis for the denial of his September 3, 1992 second jury demand. Shaw represents that a clerk told him that the "computer" indicated Shaw had until September 14, 1992 to file his demand and that the clerks' routine practice was to allow "two Mondays or up to two weeks" to file demands.

### D.

On September 21, 1992, Shaw filed a Motion for [Hawai'i Rules of Civil Procedure (HRCP) ] Rule 60 Relief from Order Denying Demand for Jury Trial, or to Rehear Motion to Extend Time to File Demand for Jury Trial; or, to Extend Time to Pay Costs for Jury Trial and Request for Settlement/Status Conference; and to Settle Order Denying Jury Trial (Rule 60 Motion). Shaw incorrectly filed this motion under HRCP Rule 60 instead of DCRCP Rule 60. However, because the text of the two rules are exactly alike, we treat Shaw's Rule 60 Motion as one filed under DCRCP Rule 60. DCRCP Rule 60, in pertinent part, provides relief from a judgment or order for the following reasons:

> **(a) Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders....
>
> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, *the court may relieve a party ... from a final* judgment, *order,* or proceeding *for* the following reasons: (1) mistake, inadvertence, surprise, or *excusable neglect*....

(Emphases added.)

Shaw apparently attempted to file a third jury demand and an answer on September 28, 1992, but these documents were returned

to Shaw unprocessed because the clerk believed Shaw had failed to pay filing fees. Shaw characterizes this incident as an *"ex parte"* striking of his jury demand.[5] The third demand was accepted for filing on September 30, 1992, and a hearing on Shaw's Rule 60 Motion and jury demand was set for October 12, 1992.

On October 8, 1992, BOH filed a memorandum opposing Shaw's Rule 60 Motion. BOH claimed that Rule 60(a) was aimed at conforming clerical errors in written documents to the oral orders of the court, not changing court rules to correct clerical errors. As for Shaw's claim under Rule 60(b), BOH argued again that Shaw's conduct did not amount to excusable neglect because "Shaw is an attorney whose [sic] has a duty to be familiar with the Hawaii [Hawai'i] District Court Rules of Civil Procedure."

At the October 12, 1992 hearing, the judge denied Shaw's Rule 60 Motion. Shaw subsequently filed a Verified Petition for Writ of Prohibition and/or Mandamus in the Supreme Court of Hawai'i (No. 16536) on October 16, 1992 (the Writ), asserting that "Respondents Honorable Judges ... clearly abused their discretion and exceeded their lawful authority in denying [Shaw's] demand for jury trial[.]" The supreme court denied Shaw's petition in an October 26, 1992 Order, stating that Shaw "has failed to demonstrate an indisputable right to relief and will have an eventual remedy by way of appeal[.]"

On appeal, Shaw brings to this court's attention an undated, handwritten note signed by a clerk and addressed to a judge on a computer printout of the case docket minutes. The note states that Shaw "was given [until] 9/28/92 to file his demand." Nothing in the record indicates under what authority this purported extension was given, nor to whom, if anyone, it was communicated. In any event, as we reiterate *infra,* only the court has the authority to grant an extension of time to file jury demands.

---

**5.** Shaw contends that his third demand filed on September 28, 1992 "was stricken *ex parte* by a clerk after being stamped 'filed' and accepted for filing." However, the demand was still untimely.

## II.

Shaw evidently maintains that the court erroneously denied his Rule 6 Motion and Rule 60 Motion because his tardy jury demands were the result of "excusable neglect" entitling him to an extension of time under DCRCP Rule 6 and relief from the denial orders under DCRCP Rule 60. He claims that the denials deprived him of his constitutional right to a trial by jury.

### A.

■ DCRCP Rule 6(b) allows for an extension of time when the rules require an act to be done within a specified time. Shaw did not file his jury demand prior to the expiration of the August 27 deadline. Instead, Shaw filed his demand on August 31, 1992, which was after the August 27 deadline.

After the expiration of the period originally prescribed, however, DCRCP Rule 6(b)(2), allows an extension of time where the failure to act was the result of "excusable neglect." Additionally, DCRCP Rule 60(b)(1) authorizes relief from a final judgment or order on the same ground of "excusable neglect."

■ We hold that orders denying motions for relief under DCRCP Rules 6(b)(2) and 60(b)(1) on the ground of excusable neglect are reviewed, on appeal, under the abuse of discretion standard. DCRCP Rule 6(b) parallels Rule 6(b) of the Federal Rules of Civil Procedure (FRCP).[6] On appeal of a ruling under FRCP Rule 6(b), "[t]he determination [of] whether neglect is 'excusable' in a particular case rests with[in] the sound discretion of the district court." *Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir.1984) (citing *Manhattan–Ward, Inc. v. Grinnell Corp.*, 490 F.2d 1183, 1186 (2d Cir.1974)). *Cf.* 4A C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1165, at 476–77 (2d ed. 1987). Given the similarity between DCRCP Rule 6(b) and FRCP Rule 6(b), we adopt the

same standard of review. Likewise, on appeal, an order denying a HRCP Rule 60(b) motion is reviewed for abuse of discretion. *Hawai'i Hous. Auth. v. Uyehara*, 77 Hawai'i 144, 147, 883 P.2d 65, 68 (1994) (citation omitted). *Accord Pogia v. Ramos*, 10 Haw. App. 411, 415, 876 P.2d 1342, 1345 (1994) (holding that appellate review of a Rule 60 motion is limited to determining whether the lower court abused its discretion). We hold, accordingly, that an order denying a DCRCP Rule 60 motion is also subject to review on appeal for abuse of discretion. Under the abuse of discretion standard, " 'to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Sapp v. Wong*, 62 Haw. 34, 41, 609 P.2d 137, 142 (1980) (quoting *State v. Sacoco*, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961)).

We believe the district court could find, that Shaw, as an attorney representing himself, was not entitled to rely on the alleged advice of court clerks regarding the timely filing of his jury demand. *See Gabriel v. United States*, 30 F.3d 75 (7th Cir.1994) (finding that counsel's reliance on court clerk's advice that service on the United States Attorney could be made by certified mail was not "good cause" for failure to properly serve the United States Attorney pursuant to FRCP Rule 4(j));[7] *McGuire v. Review Bd. of Indiana Employment Sec. Div.*, 121 Ind.App. 377, 99 N.E.2d 263 (Ind. App.1951) (holding that a lawyer was not entitled to rely on a court clerk's advice on interpreting statutes or rules of court regarding the filing of a transcript for appeal).

■ The DCRCP Rule 38(b) jury demand deadline is clear and unambiguous. Even accepting Shaw's representations as true, court clerks exercise no judicial power. An extension of time to file a jury demand may only be obtained from the court. As an attorney, Shaw should have known that

---

6. Federal Rules of Civil Procedure (FRCP) Rule 6(b) mirrors Hawai'i District Court Rules of Civil Procedure (DCRCP) Rule 6(b) with minor differences relating to rule numbering.

7. The court added, "Moreover, had plaintiff's counsel read [FRCP] Rule 4 carefully or read the relevant case law, he would have quickly realized that he could not serve the United States Attorney by mail. And reliance on the advice of a Clerk's office employee cannot excuse plaintiff's counsel's failure to do basic research." *Gabriel v. United States*, 30 F.3d 75, 77 (7th Cir.1994) (citation omitted).

clerks have no authority to extend the deadline. *See Gabriel; McGuire.* Shaw failed to obtain leave of the court prior to filing his tardy jury demands. As a result of his faulty reliance on alleged statements by court clerks, we cannot say that under the facts here, the court "clearly exceeded" reason, or disregarded rules or principles of law or practice in denying Shaw's Rule 6 Motion and Rule 60 Motion. *See Sapp.* Therefore, it was within the district court's discretion to rule that Shaw's failure to timely file his jury demand was not the result of "neglect" which was "excusable" under DCRCP Rule 6(b)(2) or under DCRCP Rule 60(b)(1).

### B.

Shaw also asserts that "[i]t was uncontroverted by the District Court in the related writ proceeding ... or by [BOH] that the Court routinely extends the ten[-]day deadline, for litigants." As we noted previously, however, the supreme court denied the Writ, finding that Shaw "failed to demonstrate an indisputable right to relief[.]" Moreover, counter to Shaw's claim, neither the record nor the Writ proceeding establishes that the district court "routinely extends the ten[-]day deadline" for litigants. Consequently, we find this argument meritless.

### C.

■ There is no dispute that Shaw missed the ten-day jury demand deadline under DCRCP Rule 38(b). In *Lii v. Sida of Hawaii, Inc.,* 53 Haw. 353, 355–356, 53 Haw. 372, 493 P.2d 1032, 1034, *cert. denied,* 408 U.S. 930, 92 S.Ct. 2493, 33 L.Ed.2d 342, *and reh'g denied,* 409 U.S. 903, 93 S.Ct. 107, 34 L.Ed.2d 166 (1972), the Hawai'i Supreme Court interpreted HRCP Rule 38,[8] the circuit court counterpart of DCRCP Rule 38, stating:

> [T]he right to a jury trial [is] inviolate in the absence of an unequivocal and clear showing of a waiver of such right either by express or implied conduct. This court will indulge every reasonable presumption against the waiver of such right.... *However, the mechanics constituting a reasonable regulation of the manner of exercising that right must be complied with for the right to be preserved.*

(Citations omitted.) (Emphasis added.) In a footnote, the *Lii* court observed,

> it has been held that mere inadvertence or bare oversight in failing to make a demand for jury trial within the time allowed by the applicable rule for making such demand as of right are insufficient grounds upon which the court may exercise its discretion to grant a jury trial.

*Id.* at 356 n. 1, 493 P.2d at 1034 n. 1 (citation omitted). We apply the *Lii* standard to the similar language in DCRCP Rule 38.

Shaw was given ten days to file his demand under DCRCP Rule 38(b). Under the facts here, the district court apparently found that reliance on clerks' statements was not a valid excuse for Shaw's failure to file within the ten days. Without the support of an adequate "excuse," Shaw's actions amounted to "mere inadvertence or bare oversight" which, under *Lii,* were declared insufficient grounds for a court to exercise its discretion to grant a jury trial. *Id.*

We hold, then, that the court did not erroneously deny Shaw his constitutional right to a jury trial. Therefore, the district court had jurisdiction to proceed and render judgment against Shaw. Because Shaw's first demand was untimely, his second and third demands were obviously also too late.

### III.

### A.

■ We next consider Shaw's contention that he was improperly denied pre-trial discovery.

---

8. DCRCP and Hawai'i Rules of Civil Procedure (HRCP) Rule 38(b) both provide that any party may demand a jury trial by serving a demand in writing on the other parties, but the two rules slightly differ in their filing deadline requirements. HRCP Rule 38(b) requires that a demand for jury trial be made "not later than 10 days after the service of the last pleading directed to such issue." DCRCP Rule 38(b) requires that the demand be made "not later than 10 days after the case is at issue."

On November 2, 1992, the court granted BOH leave to take Shaw's deposition and gave Shaw permission to serve interrogatories. On the same date, the court also set a firm trial date of November 13, 1992.

BOH received Shaw's interrogatories and discovery request on November 5, 1992, a week before trial. BOH served its responses to the interrogatories by facsimile on November 12, 1992 in the late afternoon and, according to Shaw, sent the remainder of its response on the morning of November 13, the day of trial. At trial, Shaw requested a continuance because of the allegedly tardy answers to some of his interrogatories, but this request was denied.

Shaw asserts that when the court granted Shaw leave to serve interrogatories on November 2, 1992, the court also imposed a deadline requiring BOH to respond within seven days. At trial, BOH's counsel maintained that BOH's answers to Shaw's interrogatories were "faxed ... in seven days[.]" Pursuant to DCRCP Rule 33, BOH was required to answer Shaw's interrogatories within fifteen days unless the court extended or shortened the deadline.[9] The record is unclear as to whether a part of BOH's response to Shaw's interrogatories was transmitted on the morning of trial. We note, however, that the case had been at issue since the August 17, 1992 hearing and that

Shaw had ample opportunity to conduct discovery during the intervening months of September and October. Therefore, considering the state of the record and the circumstances, we decline to disturb the trial court's denial of Shaw's motion for continuance. *See Kam Fui Trust v. Brandhorst,* 77 Hawai'i 320, 884 P.2d 383 (App.1994) (holding that the denial of a motion for continuance is within the sound discretion of the court and will not be disturbed on appeal absent a showing of abuse); *Tradewinds Hotel, Inc. v. Cochran,* 8 Haw.App. 256, 799 P.2d 60, *reconsideration denied,* 8 Haw.App. 662, 868 P.2d 466 (1990).

■ Shaw's interrogatories also contained requests for production of documents. BOH refused to produce the documents, citing Shaw's noncompliance with DCRCP Rule 34.[10] DCRCP Rule 34 requires that a party file a motion "showing good cause" for the production of documents.[11]

We conclude that Shaw was not entitled to production of the requested documents because he failed to obtain a court order as DCRCP Rule 34 requires. Nothing in the record indicates that Shaw made an oral or a written motion demonstrating good cause for production of BOH documents. Furthermore, Shaw's interrogatories indicate that he was aware that a formal request for the documents was required.[12]

---

9. DCRCP Rule 33 provides in relevant part that:

the party upon whom the interrogatories have been served shall serve a copy of the answers on the party submitting the interrogatories within 15 days after the service of the interrogatories, unless the court, on motion and notice and for good cause shown, enlarges or shortens the time.

10. Shaw's interrogatories state in pertinent part the following:

1. State the contents of or produce each and every Document relating to the allegation in the complaint.
   *Answer:*
   Copies of [BOH's] trial exhibits will be provided to [Shaw].
   ....
41. Please identify any and all documents with sufficient particularity for a request to produce which you contend has knowledge of the facts set forth in the preceding interrogatory.

*Answer:*
See answer to 1 above. [BOH] objects to revealing any further information in answer to this interrogatory on the grounds that [Shaw] has not complied with Rule 34, District Court Rules of Procedure.

11. DCRCP Rule 34 provides in pertinent part:

Upon motion of any party showing good cause therefor and upon notice to all other parties, ... the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents ..., not privileged, which constitute or contain evidence relating to any of the matters within the scope of examination permitted by Rule 26(b) and which are in his [or her] possession, custody, or control....

12. Interrogatories 21(d) and 25(d) state: *"If you will do so without a request for production,* please attach a copy of said document to your answers to these interrogatories."* (Emphasis added.)

## B.

■ Shaw additionally argues that he was "substantially prejudiced" when the trial court order quashed his trial subpoenas.

Shaw attempted to serve subpoenas duces tecum on November 12, 1992, the day before trial, seeking to compel three BOH officers [13] to attend the trial and to bring documents pertaining to BOH's policies. The subpoenas stated, *inter alia,* "You are further ordered to bring with you . . . all contracts with VISA or MASTERCARD and all writings described in the first request for production, served upon your counsel[.]" [14] Two of the officers were out of state and could not be served.

On November 13, 1992, the day of trial, BOH moved to quash the subpoenas duces tecum, arguing that "none of these people had any personal involvement in the transactions or occurrences at issue in this case" and that Shaw's subpoenas were "nothing more than an attempt to harass the senior management of [BOH] about this case." Furthermore, BOH maintained that the credit reporting information Shaw sought could be obtained from Michael Young, another BOH officer who was one of the trial witnesses. In reply, Shaw explained that the subpoenas were served late because he had been out of town and that the bank's standard policies for reporting information to the credit bureau constituted "not only part of [his] defense, but . . . probably the heart of [his] counterclaims." The district court granted BOH its motion to quash the subpoena served on Thomas J. Kappock (Kappock), the Vice Chairman of the Board of BOH, and declared the other two subpoenas "moot" since the officers could not be served.[15]

DCRCP Rule 45 governs subpoenas:

(b) **For Production of Documentary Evidence.** A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, *may (1) quash or modify the subpoena if it is unreasonable and oppressive. . . .*

(Emphasis added.)

■ Prior to amendment in 1991, FRCP Rule 45(b) was identical to DCRCP Rule 45(b). Under FRCP Rule 45, the "burden to establish that a subpoena duces tecum is unreasonable or oppressive is on the person who seeks to have it quashed." 9A C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2459, at 46 (2d ed. 1995) (9A Wright & Miller). We have adopted the federal approach. "On review, the action of a trial court in enforcing or quashing the subpoena will be disturbed only if plainly arbitrary and without support in the record." *Powers v. Shaw,* 1 Haw.App. 374, 376, 619 P.2d 1098, 1101 (1980) (citing 9 C. Wright & A. Miller *Federal Practice and Procedure* § 2463, at 452 (1st ed. 1971)).[16]

If an issue about a trial court's determination to enforce or to quash a subpoena reaches the appellate court[,] . . . the action of the trial court will not be disturbed by the court of appeals unless it plainly is arbitrary and is without support in the record. Thus, the scope of appellate re-

---

13. Shaw attempted to serve the three subpoenas duces tecum on Thomas J. Kappock, Vice Chairman of the Board of BOH; Donna Hunt, Senior Vice President of BOH; and Ruth Miyashiro, corporate secretary of BOH. However, only Thomas J. Kappock was successfully served with a subpoena duces tecum.

14. The only subpoenas included in the record are the ones for Thomas J. Kappock and Donna Hunt. They are attached as exhibits to BOH's motion to quash the subpoenas. Both subpoenas contained the same directive ordering the recipients to bring the "contracts with VISA or MASTERCARD" with them.

15. The court made the following ruling: "The motion to quash the subpoena duces tecum as to Tom Kappock is granted, and I find it moot as to the others who have not been able to be served since today is the day of trial."

16. The *Powers* court found that "[t]o subpoena six attorneys from the same law firm to appear with their records and to testify at exactly the same time appears unreasonable and oppressive on its face." *Powers v. Shaw,* 1 Haw.App. 374, 376, 619 P.2d 1098, 1101 (1980).

view of issues arising under Federal Rule 45 is quite limited.

9A Wright & Miller, § 2466, at 90 (footnote omitted). Applying this standard to the case at issue, we affirm the trial court's order granting BOH's motion to quash the subpoena because the order had support in the record. Shaw made no offer to show how Kappock's testimony was specifically material to the case, in response to BOH's argument.[17] Under the circumstances, we cannot say that the trial court was plainly arbitrary in refusing to compel a BOH witness, who apparently had no personal knowledge of the facts of this case and who was served the day before trial, to attend trial in response to a general request for documents. Therefore, the trial court did not err in quashing the subpoena under DCRCP Rule 45(b)(1).

## IV.

Shaw contends that he was denied the equal protection of the laws when the district court denied him discovery and quashed his subpoenas. Because Shaw fails to provide discernible argument on this alleged error, we again decline to consider these points other than what we have set forth previously. *Hall v. State,* 10 Haw.App. 210, 218, 863 P.2d 344, 348, *cert. denied,* 76 Hawai'i 246, 868 P.2d 464 (1993).

## V.

### A.

Further, Shaw urges that the court improperly admitted BOH's Exhibits 1, 3, 4, and 15 into evidence. Exhibit 1 was a copy of a "VISA Gold Acceptance Certificate" (Acceptance) purportedly signed by Shaw, which stated that Shaw had been pre-approved for a VISA Gold Card with a $5,000 credit line. Exhibit 3 contained copies of all BOH statements issued to Shaw for his Gold Visa Account (Account). Exhibit 4 consisted of copies of Shaw's checks and the payment coupons attached to the BOH statements

sent to Shaw. Exhibit 15 was a copy of the back of each of the Exhibit 3 statements.[18] We conclude that the district court did not abuse its discretion in admitting Exhibits 1, 3, 4, and 15.

### B.

■ Shaw objected to Exhibits 1, 3, 4, and 15 on "best evidence" grounds pursuant to Hawai'i Rules of Evidence (HRE) Rules 1002 and 1003. HRE Rule 1002 states that "except as otherwise provided[,]" the original writing is required "[t]o prove the content of a writing[.]" Under HRE Rule 1003, however, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Because Exhibits 1, 3, 4, and 15 are "duplicates," we are primarily concerned with the application of HRE Rule 1003.

■ The standard applicable to evidentiary rulings on appellate review depends upon the particular rule of evidence at issue. *Kealoha v. County of Hawaii,* 74 Haw. 308, 319, 844 P.2d 670, 676 (1993); *Kam Fui Trust v. Brandhorst,* 77 Hawai'i 320, 326, 884 P.2d 383, 389 (App.1994). The traditional standard of abuse of discretion is used unless the application of the specific evidentiary rule can only yield a single correct result. *Kealoha,* 74 Haw. at 319–320, 844 P.2d at 676. If only a single correct result is possible, the court's decision is then reviewed under the right/wrong standard. *Id.*

HRE Rule 1003 is identical to Federal Rules of Evidence (FRE) Rule 1003. In that regard, the Advisory Committee's Note to FRE Rule 1003 states that "a counterpart serves equally as well as the original, if the counterpart is the product of a method which insures accuracy and genuineness. By defi-

---

17. According to BOH's counsel's affidavit, Thomas J. Kappock "ha[d] no knowledge of and did not participate in any of the transactions or occurrences at issue in this case."

18. BOH's Exhibit 15 was entitled "Explanation of Monthly Finance Charge Computation" and contained, *inter alia,* instructions on what an account holder should do in case of "errors or questions" about a bill.

nition in [FRE] Rule 1001(4),[19] . . . a 'duplicate' possesses this character." FRE Rule 1003 advisory committee's note *reprinted in* M. Graham, *Federal Rules of Practice and Procedure: Evidence* § 7001, at 939 (interim ed. 1992) (footnote added).

Hence, HRE Rule 1003 directs the court to determine the admissibility of a duplicate only if "a genuine question is raised as to the authenticity of the original," or "in the circumstances it would be unfair to admit the duplicate in lieu of the original." With respect to the former ground, we have established that a trial court's ruling on the authenticity of an item is subject to review for abuse of discretion. *See Kam Fui*, 77 Hawai'i at 326, 884 P.2d at 389. By consigning the issue of whether the circumstances would deem it "unfair to admit the duplicate in lieu of the original" to the court, the rule appears to vest the court with the discretion to weigh the relevant circumstances in deciding whether unfairness would result from a duplicate's admission. Because the court is vested with such discretion, we hold that a trial court's denial of an objection to the admissibility of a duplicate under HRE Rule 1003 is reviewed for abuse of discretion. Thus, we review the district court's admission of BOH's Exhibits under that standard.

Shaw also objected to Exhibits 3 and 15 on the grounds that there was "no showing he received them." Shaw did not cite any specific rule of evidence with respect to Exhibits 3 and 15.

C.

The following facts were adduced at trial: In April 1990, the Acceptance (Exhibit 1) was sent to Shaw at his address. The Acceptance was returned to BOH signed.[20] BOH sent Shaw a Visa Gold Card Agreement (Agreement) and a document explaining Shaw's billing rights as a cardholder along with his Visa card.[21] From May 1990 through September 1990, the credit card limit was exceeded, and the bank calculated the debt owed at $5,791.73 plus interest. According to BOH's records, only one Visa card was issued on Shaw's account, and there was no evidence of fraudulent use in the account.

In February 1991, Shaw's account was referred to Claire Kasher (Kasher), a loan recovery specialist at BOH's Loan Adjustment Department. Kasher testified that she sent a letter to Shaw on March 22, 1991, informing him that her department was handling his "delinquent" account. Shaw responded by calling Kasher on the telephone. In this preliminary conversation, Shaw did not dispute any of the charges nor did he claim his signature on any document was forged. Shaw and Kasher agreed to a repayment schedule of $100 per month. Shaw made four payments of $100 each for the months of May, June, July, and October of 1991.

When no further payments were received during the next six months, Kasher again

19. Federal Rules of Evidence Rule 1001(4), identical to Hawai'i Rules of Evidence Rule 1001(4), defines "duplicate" as follows:

A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original.

20. The bottom of the Acceptance contained the following in fine print:

By signing above you are asking Bank of Hawaii to open a VISA Gold account in your name(s) and issue VISA Gold card(s) to you. You authorize Bank of Hawaii to verify information you have given above and to receive and exchange credit information about you,

both now and in the future. You agree to be liable for all charges to your VISA Gold account including an annual membership fee of $45.00 ($15.00 for first year). With your VISA Gold card(s) we will send you your VISA Gold Agreement. *Read your VISA Gold Agreement. Because it comes with your card(s), you will by using your card(s) be agreeing to the terms of your VISA Gold Agreement, and it will be binding upon you until you cancel your account as provided in it.* If either you or Bank of Hawaii cancel your account, all cards issued on your account will be automatically cancelled. (Emphasis added.)

21. The Agreement and the cardholder's billings rights statement (Exhibit 16) govern BOH's Visa Gold Card accounts. These documents require Visa cardholders to notify BOH of any contested or disputed charges *within 60 days* after BOH sends the first statement showing the contested or disputed charges.

contacted Shaw. In this second conversation, a dispute arose between Shaw and BOH regarding the credit reporting of Shaw's debt. Shaw explained he had stopped paying because he was displeased with the negative credit report BOH had sent to the credit bureau. He did not state that the signature on the Acceptance was a forgery or dispute the debt. Shaw cross-examined Kasher only on the issue of credit reporting.

BOH had referred Shaw's account to attorney Emma Matsunaga (Matsunaga) for collection. Matsunaga testified that she had several telephone conversations with Shaw, the first occurring on February 29, 1992. Shaw reiterated his dissatisfaction with the credit report but did not contest the amount owed. According to Matsunaga, Shaw did not question the credit card transactions or mention forgery in any of their discussions. She related that Shaw told her he was going through a divorce, admitted he overspent on the card, but never contended that someone else had used his card. Shaw's cross-examination of Matsunaga was essentially on the credit reporting issue.

Michael Young (Young), the vice president/manager of BOH's Bank Card Center, explained that the original Acceptance had been destroyed but a copy had been obtained from microfiche records. Young testified that the Acceptance was sent to the address listed for Shaw's checking account. Young also confirmed that the credit card statements (Exhibit 3) were sent to the same address as the one listed on the Acceptance. BOH subsequently received Shaw's checks and the payment coupons that comprised Exhibit 4. The address stated on each of Shaw's checks in Exhibit 4 was the same address to which each of the statements in Exhibit 3 and the Acceptance had been mailed. Through Young's testimony, BOH established that a comparison of the payment coupons and checks in Exhibit 4 and the statements in Exhibit 3 revealed that each payment coupon and check corresponded to a charge on one of the statements in Exhibit 3.[22]

Exhibit 15 was the standard language found on the back of every credit card statement in Exhibit 3, describing the procedure for contesting credit card charges.

Shaw testified briefly at trial. He maintained that he did not sign the Acceptance, stating, "That's not my signature. That's not my writing." He also "admit[ted] to using the card but [did not] know how much [sic] [he] used [it]." Shaw did not disagree that a debt was owed and primarily submitted contradicting testimony on the credit reporting issue.

At the conclusion of the trial, the court made the following findings of fact:

Mr. Shaw ... received [a BOH] Gold Card either from his wife or his secretary and used it. There was only one card issued to that account. The account is in evidence by a [sic] virtue of the acceptance card which is [BOH's] Exhibit 1 together with the Gold Card Agreement which is [BOH's] Exhibit 2.

Mr. Shaw has admitted that he used the card and that he went over the credit limit that was established for the card.

Consistent therewith, the Court finds that the Bank Card Center when finding that Mr. Shaw was over the credit limit and in arrears, charged off the account and sent it to the Loan Recovery Department [of BOH.]

The Court finds that [BOH] routinely sends information regarding its credit card accounts no matter what the condition of the account, that is to say whether it is paid up or not, on a monthly basis to ... credit reporting agencies ... and [BOH] did so with respect to Mr. Shaw's account treating it like all others.

### D.

On review, we defer to the trial court's findings on the credibility of witnesses and the weight of the evidence. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74

22. Exhibit 4 contains three checks and payment coupons in the amounts of $15.00 for May 1990, $142.00 for June 1990, and $203.00 for July 1990. Shaw's statements for the months of May, June, and July 1990 in Exhibit 3 list the following amounts as "minimum" payment due: $15.00, $142.00, $345.00.

Haw. 85, 117, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (holding that issues "dependent upon credibility of witnesses and the weight of the evidence" are within "the province of the trial judge") (citations omitted).

Given the evidence, we do not believe the court erred in admitting the exhibits. From the testimonies of Kasher, Matsunaga, and Young, and Shaw's own admissions, the court could have disbelieved Shaw when he said he did not sign the Acceptance, or inferred from the surrounding circumstances, that Shaw had knowingly used the card issued to him and, thus, was obligated to pay · the debt. Under such circumstances, the court could have found that Shaw did not raise a "genuine" issue as to the authenticity of the Acceptance (Exhibit 1) and that the circumstances were not such as to make the receipt of the Acceptance in evidence "unfair." HRE Rule 1003. Shaw did not take issue with the genuineness of the original documents in Exhibit 3, 4, and 15 and failed to demonstrate any circumstances which would render the submission of these exhibits into evidence "unfair."

Also bolstering the admission of these exhibits was the chain of evidence from which the court could also reasonably infer that Shaw did receive the credit card statements (Exhibit 3) and thus, also, the back of those statements (Exhibit 15). BOH proved that it sent the Acceptance and statements to the address reflected on Shaw's checks. Shaw's checks in payment of the credit card charges were, in turn, received by BOH. The checks were accompanied by payment coupons detached from the statements which BOH had sent to the address reflected on Shaw's checks. Accordingly, Shaw must have received the statements because the coupons he transmitted to BOH with his checks had been detached from those statements. Hence, the court did not abuse its discretion in admitting the exhibits.

**23.** Shaw asserted the following counterclaims against BOH: (1) wanton/reckless breach of contract; (2) fraud or deceit based on suppression or concealment of fact; (3) negligent misrepresentation; (4) libel; (5) breach of implied covenant of

### VI.

Finally, while Shaw challenges certain findings the court made concerning his assertion that BOH had offered "a credit reporting abatement in consideration for a paydown [of Shaw's credit card debt] to credit limit," he again fails to provide discernible argument on this point. *See Hall v. State*, 10 Haw.App. 210, 863 P.2d 344, *cert. denied*, 76 Hawai'i 246, 868 P.2d 464 (1993).

The court found that Shaw failed to prove his counterclaims [23] and made the following findings with respect to Shaw's counterclaims:

And the Court finds that with respect to negligent misrepresentation or any fraud count that the facts in this trial do not set forth or rise to the level of clear convincing evidence or even on the basis of a preponder[a]nce of evidence set forth facts necessary for the defendant to prevail on the counterclaim.

. . . .

With respect to the others, the Court finds that the facts also fail to set forth the counterclaim actions.

Under the circumstances, and upon a review of the record we see no reason to reverse the district court. *See Hall.*

### VII.

For the foregoing reasons, the November 19, 1992 and December 2, 1992 Judgments are affirmed.

### OPINION ON MOTION FOR RECONSIDERATION

■ Defendant–Appellant Stephen M. Shaw (Shaw) filed a motion for reconsideration on January 16, 1996 following our decision in *Bank of Hawaii v. Shaw*, 80 Hawai'i 497, 911 P.2d 132 (App.1996). We granted Shaw's motion for reconsideration on January 22, 1996 and further ordered Plaintiff–Appellee Bank of Hawaii (BOH) to file an

good faith and fair dealing; (6) civil conspiracy; (7) invasion of privacy; (8) interference with economic advantage; (9) infliction of emotional distress; and (10) negligent supervision of hiring of employees.

answer to the aforementioned motion for reconsideration. BOH timely filed its answer on February 5, 1996.[1] We amend our opinion with respect to Shaw's contention that the district court rules do not require filing of a jury demand within ten days, and we deny Shaw's request to modify our opinion on all other grounds.[2]

Shaw contends that, our opinion "overlooked the language in the rule which requires only service within ten days. Nothing in the rule requires filing within ten days[.]" (Citations omitted). We agree.

District Court Rules of Civil Procedure (DCRCP) Rule 38(b) states that a party may demand a jury trial "by *serving* upon the other parties a demand therefor *in writing* at any time after the commencement of the action and *not later than 10 days* after the case is at issue." (Emphases added.) DCRCP Rule 38(d) implicitly requires the party demanding a jury trial "to file it as required by [DCRCP] Rule 5(d)." DCRCP Rule 38(d). DCRCP Rule 5(d) provides that "all papers after the complaint required to be served upon a party *shall be filed with the court* either before service or within a reasonable time thereafter." (Emphasis added.) DCRCP Rule 5. "The failure of a party to serve a demand as required by [DCRCP Rule 38] and to file it as required by

[DCRCP] Rule 5(d) constitutes a waiver by that party of trial by jury." DCRCP Rule 38(d).

The record does not reflect that Shaw served the jury demand upon BOH within ten days of the case being at issue as required by Rule 38(d). Consequently, Shaw's failure "to serve a demand as required by [DCRCP Rule 38] and to file it as required by [DCRCP] Rule 5(d) constitutes a waiver by him of trial by jury." DCRCP Rule 38(d).

The opinion is amended to delete any requirement that the jury demand be "filed" within ten days under DCRCP Rule 38. Because we find nothing else in Shaw's motion for reconsideration necessitating further amendment, the motion for reconsideration is thus denied in all other respects.

1. On February 5, 1996, shortly before Bank of Hawaii filed the answer that we requested, Stephen M. Shaw (Shaw) filed a document entitled "Appellant's First Supplemental Memorandum in Support of Motion for Reconsideration" in contravention of Rule 40(c) of the Hawai'i Rules of Appellate Procedure (HRAP). HRAP Rule 40(c) states in pertinent part, "No answer to a motion for reconsideration *or reply to an answer* will be received unless requested by the court." (Emphasis added.) We did not authorize Shaw's filing of any supplemental documents. Thus, we decline to consider the arguments in Shaw's supplemental memorandum, as well as the subsequent memoranda, replies, amendments, and motions filed by both parties.

2. The remaining points Shaw raised in his motion for reconsideration are as follows: (1) the district court clerk has authority to grant extension of time to file jury demands; (2) Shaw perfected his jury demand within the court clerk's extension period authorized by Rule 10(a) of the Hawai'i Rules of the District Courts

(HRDC) notwithstanding the court's minutes which granted him four weeks; (3) the jury demand Shaw served and filed on August 31, 1992 is a pleading within the meaning of HRDC Rule 10(a); (4) this court misapprehended Shaw's purported denial on the return days as putting the matter at issue; (5) the district court's statement committing the case to circuit court requires dismissal for lack of jurisdiction; and (6) the district court had no jurisdiction over Shaw's counterclaim for defamation (libel).

We find the first four claims to be meritless and based on misreading and misinterpretation of the relevant court rules and case law. As for Shaw's last contention regarding the lack of jurisdiction over the libel counterclaim, the district court properly concluded that it had no jurisdiction over this claim, stating, "With respect to the liable [sic] action, the Court has no jurisdiction over that action as District Court." Furthermore, because Shaw failed to argue the district court's lack of jurisdiction over his libel counterclaim as a point of error in his opening brief, as HRAP Rule 28 requires, we disregard it.