884 P.2d 383

KAM FUI TRUST, By and Through its authorized agent, Commercial Management Corporation, Plaintiff–Appellee,

v.

Gloria BRANDHORST and Glenn Brandhorst, Defendants–Appellant,

and

Larry Brandhorst dba Kailua Health Club, Defendant.

No. 15837.

Intermediate Court of Appeals of Hawaiʻi.

Sept. 27, 1994.

Order of Modification on Motion for Reconsideration Oct. 17, 1994.

Richard C. Post, on the brief, Honolulu, for defendants-appellants.

Fred Paul Benco, Linda S. Birn, on the brief, Honolulu, for plaintiff-appellee.

Fred Paul Benco and Linda S. Birn, on the motion for reconsideration, Honolulu, for plaintiff-appellee.

Before HEEN, WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendants–Appellants Gloria Brandhorst and Glenn Brandhorst were guarantors (hereafter Guarantors) of rental payments for part of the term of an assignment of lease of certain real property between the Plaintiff–Appellee Kam Fui Trust (hereafter Creditor) and Defendant Larry Brandhorst (hereafter Principal Debtor) doing business as Kailua Health Club. Guarantors guaranteed payment of rent for the period May 1, 1987 to November 30, 1988, which was a portion of the lease's term which ran from May 1, 1987 to April 1, 1994. The guaranty agreement stated the following:

By this letter, we, the undersigned, obligate ourselves to you, as surety for any financial deficiency caused by the failure of our son, Larry Brandhorst, to make timely and consecutive rent payments to you for the rental of the premises located at 1090 Keolu Drive, Kailua, Hawaii, [Hawai'i] pursuant to the Rental Agreement executed between Larry Brandhorst and James Trask, for the period May 1, 1987 to November 30, 1988.

We understand that the lease covers the period from May 1, 1987 to April 1, 1994, and that the rent is $2500.00 per month for this rental period.

On April 26, 1989, Creditor filed a complaint against Principal Debtor and Guarantors alleging that Principal Debtor had "failed to make payments of rent" and other charges and that Guarantors had "failed to honor their personal guarantee by refusing or neglecting to make the payments of rent and other monies due to [Creditor] by [Principal Debtor]."

On December 26, 1989 Principal Debtor filed an answer admitting that he had entered into a lease agreement with Creditor and that "his parents signed some type of agreement." Principal Debtor pleaded several defenses and filed a counterclaim.

On June 2, 1989, Guarantors filed an answer admitting "they signed some type of agreement." Guarantors pleaded several defenses including the defense that "[Guarantors] intend to rely upon the Counterclaims that shall be filed by ... Defendant Larry Brandhorst."

On May 9, 1991 the court ordered "that default be entered against [Guarantors]" for failure to file a settlement conference statement.

On May 14, 1991 a Notice of Proof Hearing was filed, setting a "proof hearing against [Guarantors]" for June 4, 1991.

Pursuant to the Order, a proof hearing was held. Guarantors claimed the hearing was premature because Principal Debtor's underlying obligation had not yet been determined. They requested a continuance of the hearing. That request was denied by the circuit court and is the subject of Guarantors' first point on appeal. At the hearing, Creditor called one witness, a property manager, and offered certain exhibits, including Plaintiff's Exhibits 2, 3, and 4 for identification, into evidence. The court received these exhibits in evidence over Guarantors' objection that a proper foundation had not been laid for their introduction. The court's receipt of Plaintiff's Exhibits 2, 3 and 4 is the subject of Guarantors' second point on appeal. Judgment against Guarantors was entered by the court on November 18, 1991.

## I.

■ Concerning Guarantors' first point of appeal, it is well-established "that the granting or denial of a continuance is a matter that is addressed to the sound discretion of the trial court and is not subject to reversal on appeal absent a showing of abuse." *Sanders v. Point After, Inc.*, 2 Haw.App. 65, 70, 626 P.2d 193, 197 (1981). *Accord Alt v. Krueger*, 4 Haw.App. 201, 209, 663 P.2d 1078, 1083 (1983); *Cuerva & Assocs. v. Wong*, 1 Haw.App. 194, 197, 616 P.2d 1017, 1020 (1980). " 'Generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Sapp v. Wong*, 62 Haw. 34, 41, 609 P.2d 137, 142 (1980) (quoting *State v. Sacoco*, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961)). We examine rules and principles of law or practice to determine whether the proof hearing was required to await a judicial determination of Principal Debtor's liability to Creditor.

## A.

■ Guarantors' reason for seeking a continuance was their assertion that Principal Debtor's duty to pay rent was dependent upon Creditor's maintenance of the premises in a condition fit for its intended use. Hence, Guarantors sought a continuance to await a judicial determination of Principal Debtor's defense to his alleged default in the payment of rent.

But default had already been entered against Guarantors under Rules of the Circuit Courts of the State of Hawai'i (RCCH) Rule 12.1(a)(6)(i).[1] Hence, the allegations of the complaint against Guarantors were to be treated as having been established.

"A default in an action at law is somewhat similar to the entry of a decree in equity that the bill be taken for confessed." *Felton v. Felton*, 123 Conn. 564, 567, 196 A. 791, 793 (1938) (quoting *Hooton v. G.F. Redmond & Co.*, 237 Mass. 508, 513, 130 N.E. 107 (1921)). *See also* 10 C. Wright, A. Miller, & M. Kane *Federal Practice and Procedure: Civil* § 2682 at 406 n. 2 (1983) (under former Equity Rule 16, if a defendant is in default for failure to answer or defend a bill, the plaintiff may take an order that the bill be taken *pro confesso*). Likewise, in a case preceding the adoption of the Federal Rules of Civil Procedure, the United States Supreme Court stated that a party "suffering a default will have assented that his adversary's allegations be taken as confessed...." *Commercial Casualty Ins. Co. v. Consolidated Stone Co.*, 278 U.S. 177, 180, 49 S.Ct. 98, 99, 73 L.Ed. 252, 254 (1929).

■ While an entry of "default is not a judgment[,] [i]t is an interlocutory order of the court, the effect of which is to preclude the defendant from making any further de-

---

1. In pertinent part, Rules of the Circuit Courts of the State of Hawai'i Rule 12.1(a)(6)(i) provides:
 Rule 12.1 Civil Settlement Conference; Settlement Conference Statement.
 **(a) Settlement Conference....** A settlement conference in civil cases shall be subject to the following guidelines:
 ....
 (6) *Sanctions.* The failure of a party or his attorney to appear at a scheduled settlement conference ... shall, unless a good cause for such failure ... is shown, be deemed an undue interference with orderly procedures. As sanctions, the court may, in its discretion: (i) ... hold a party in default.
 (emphasis in original). The default order states Guarantors were held in default because they "were not present and failed to attend the Scheduling [sic] Conference, either in person or through counsel...."

fense in the case so far as liability is concerned." *Esposito v. Pinecrest Country Club, Inc.,* 24 Conn.Supp. 81, 186 A.2d 822, 823 (1962). Similarly, we have held that "[u]pon the entry of default, [defendant] ... lost its standing to contest the fact of its liability, but still had standing to contest the amount of its liability." *Occidental Underwriters of Hawaii, Ltd. v. American Sec. Bank,* 5 Haw.App. 431, 433, 696 P.2d 852, 854 (1985) (citations omitted).

■ While *Occidental* and the previous cases cited concern entry of default under different rules and circumstances, we perceive no difference in the conceptual consequence of a default rendered under RCCH Rule 12.1(a)(6)(i) from that of defaults rendered generally. Thus, "[u]nless [defendant] moved to set aside the default[,] and [defendant] did not, the court could proceed ... to a [proof] hearing in damages" as the court here did. *Culetsu v. Dix,* 149 Conn. 456, 458, 181 A.2d 116, 117 (1962) (citation omitted).

■ We hold, therefore, that the entry of default under RCCH Rule 12.1(a)(6)(i) for failure to follow settlement conference requirements in the circuit court precludes a defaulted defendant from contesting liability in any proof hearing held as a result of the default, although the defaulted defendant may still contest the amount of its liability.

With respect to the instant case, *O & G Indus., Inc. v. Mizzoni,* 23 Conn.App. 19, 578 A.2d 672 (1990) is apposite. There, the trial court entered a default order against defendant, a guarantor, for failure to file an answer to the plaintiff's collection action against the debtor. Defendant's co-guarantor responded to the plaintiff's claims and proceeded to trial. At the trial, defendant was not allowed to raise the defense that the debtor's credit application was unauthenticated hearsay, although his co-guarantor was allowed to assert such a defense. The appellate court upheld the trial court's ruling, stating that the default order entered against the defendant "operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint that are essential to a judgment." *Mizzoni,* 23 Conn.App. at 22 n. 2, 578 A.2d at 674 n. 2

(citing *United Nat'l Indem. Co. v. Zullo,* 143 Conn. 124, 129–30, 120 A.2d 73, 76 (1956)). The court found that the defendant "was limited to contesting the amount of damages ... [and] conclude[d] ... that he is precluded from challenging the plaintiff's satisfaction of its burden of proof relevant to his personal guarantee. That guarantee is relevant only to his liability, which he is precluded from contesting." *Id.* (citation omitted).

Likewise, Guarantors here lacked standing to contest their liability, i.e., Guarantors were foreclosed from asserting defenses, including the defense that "[Guarantors] intend to rely upon the Counterclaims that shall be filed by [Principal Debtor]." Accordingly, at the proof hearing, Guarantors were limited to contesting the amount of damages claimed by Creditor for the period of their guaranty. Perforce, they were precluded from raising the defense that Creditor failed to maintain the premises in a condition fit for its intended use.

Because Guarantors' reason for seeking a continuance was to assert a defense which had already been precluded by the entry of default against them, the circuit court did not exceed the bounds of reason or disregard rules of law or practice in denying the motion to continue the proof of damages hearing.

## II.

We turn to the question of whether the necessary foundation was elicited for admission of Plaintiff's Exhibits 2, 3, and 4 at the proof hearing.

■ Proof hearings are subject to the requirements of the Hawai'i Rules of Evidence (HRE) because the "rules apply generally to civil ... proceedings." Hawai'i Rules of Evidence (HRE) Rule 1101(b) (1985). *See* HRE Rule 101 (1985).

### A.

■ Guarantors objected to Plaintiff's Exhibit 2, which purports to be the subject assignment of lease, on the ground that there was no foundation establishing the signature on the exhibit as that of Principal Debtor.

 We perceive the objection was for failure to authenticate the document. Authentication is "a necessary preliminary to the introduction of most writing." 2 C. McCormick, *McCormick on Evidence* § 218 (4th ed. 1992). Under HRE Rule 901(a) (1985), authentication is "a condition precedent to admissibility" of an object. HRE 901(a). This requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* Much of the problem in establishing authenticity is resolved in modern practice by stipulation or pretrial devices such as answers to interrogatories or requests for admissions.[2] 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 901(b)(1)[01], at 901–33 (1993). *See* Commentary to HRE Rule 901 (1985). Nothing in the record suggests that Plaintiff's Exhibit 2 was authenticated by such pretrial devices.

 The most direct method of authenticating an object is through the "testimony of a witness who has some basis extrinsic to the item itself for asserting its authenticity." Commentary to HRE Rule 901 (1985). The crux of the authenticity requirement is whether there is evidence which supports the conclusion that "an object is the very thing it purports to be." *Id.*

 The standard on appeal for review of evidentiary rulings depends on the particular rule of evidence in issue. *Kealoha v. County of Hawaii [Hawai'i]*, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993). Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case, review is under a "right/wrong standard." *Id.* HRE Rule 901(b) enumerates authentication methods, "[b]y way of illustration only, and not by way of limitation." HRE Rule 901(b). Rulings on authentication questions, then, do not partake of only one correct result. *See Kealoha*, 74 Haw. at 319, 844 P.2d at 676. There being no single right or wrong disposition of authentication issues, we hold that on appeal, the trial court's ruling on authentication of objects under HRE Rule 901 is subject to review for abuse of discretion.

Here the property manager testified that he had been in charge of the property since January 1988. The assignment of lease document was part of the file turned over to him on the day he started management. The manager stated, without objection by Principal Debtor, that he had knowledge of the lease provisions relating to the monthly rent and common area expenses. The witness having received the assignment of lease as part of his duties and having managed the subject property for almost eleven months of the guaranty term in accordance with the lease's terms, he had "some basis extrinsic to the item itself for asserting its authenticity." Commentary to HRE Rule 901 (1985). This extrinsic evidence supported the finding that Plaintiff's Exhibit 2 was the subject lease assignment.[3]

Therefore, we hold that there was evidence in the record from which, in its discretion, the court might properly find that the document was "the very thing it purported to be." *Id.* Hence, there was no abuse of discretion in receiving Plaintiff's Exhibit 2 in evidence.

### B.

Plaintiff's Exhibit 3 was the guaranty letter signed by Guarantors. It had previously been received in evidence as part of Plain-

---

2. Under modern practice, authentication issues should infrequently arise. Devices fostering pretrial disposition of authentication issues are numerous and "may be accomplished through a pleading, by a request to admit, by stipulation, by deposition, by interrogatory, or as a result of an agreement reached at the pretrial conference." M. Graham, *Federal Practice and Procedure: Evidence* § 6821, at 851 (Interim Ed.1992). Mandating good faith pretrial stipulations disposing of authentication issues among the parties by express amendment to the Rules of the Circuit Courts of the State of Hawai'i would appear preferable to an ad hoc case by case approach.

3. Though not referred to by the trial court or the parties, Principal Debtor admitted in his answer that he had entered into a lease agreement with Creditor on April 16, 1987, for the lease of real property located at 1090 Keolu Drive, Kailua, Hawai'i. Also, Principal Debtor stated in his settlement conference statement that the case "involves an Assignment of Lease dated April 16, 1987 ... between Plaintiff Kam Fui Trust, as Lessor, and Defendant Larry Brandhorst, as Lessee, for certain commercial property located at 1090 Keolu Drive, Kailua, Hawaii [Hawai'i]."

tiff's Exhibit 6, without objection by Guarantors. Thus, the objection to Plaintiff's Exhibit 3 was without merit and error in its admission, if any, was harmless.

## C.

■ Plaintiff's Exhibit 4 was a summary of the total amount that Guarantors owed to Creditor under the lease. Guarantors objected to its admission asserting that "a summary is only admissible in the case of a [sic] vast documentation when the underlying documents which are the basis of the summary have been admitted into evidence." The court sustained the objection to allow Creditor to establish "more foundation." The property manager testified that the monthly rent was $2,500.00, that the monthly common area fees were $1,134.53, and that Plaintiff's Exhibit 4 was a "compilation" of what was owed, as further "foundation."

Guarantors again objected on the ground that "[t]he basis of the summaries [sic] must be in evidence before the court." The court received Plaintiff's Exhibit 4 in evidence on the ground that it was a "summary of the testimonial evidence which [Creditor] just elicited from [the witness]."

The summary, however, contained more than the general foundational facts testified to by the manager. It lists the total amount due, payments received, other charges, amounts applied to rent, and the rent balance for each month from May 1, 1987, to November 1, 1988. Furthermore, the manager stated that the "figures from May 1st [19]87 through December 1st [19]87 were numbers that [he] took from the ledger of the bookkeeper of [the previous property manager]."

■ "The contents of voluminous writings ... in the form of a ... summary" are admissible in evidence under HRE Rule 1006 (1985). HRE Rule 1006. Contrary to Guarantors' objection, the original writings need not be received in evidence as a condition precedent to the summary's admission under HRE Rule 1006. *United States v. Strissel*, 920 F.2d 1162, 1163 (4th Cir.1990). *See* M. Graham, *Federal Practice and Procedure: Evidence* § 7031, at 959 (Interim Ed.1992). The rule, however, expressly requires that "[t]he originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place" unless the court orders that they be produced in court. HRE Rule 1006. Accordingly, HRE Rule 1006 mandates that the opposing party be given a reasonable opportunity to inspect and review the data underlying the summary. "Implicit in this requirement is a requirement that the opposing party have adequate time to examine the document in order to prepare a defense or challenge the accuracy of the summary." J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 1006[02], at 1006–4 (1993). Generally, the underlying documents supporting a summary offered under HRE Rule 1006 must be admissible in evidence. M. Graham, *supra*, § 7031 at 959–60. The failure to make the underlying documents available to the objecting party for examination renders the summary inadmissible. *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir.1993); *United States v. Kim*, 595 F.2d 755, 764 (D.C.Cir.1979).

■ When the rule of evidence imposes precise limitations on the type of evidence that can be admitted and its application can yield only one correct result, the appellate court must decide whether the trial court's ruling was "'right or wrong.'" *Kealoha v. County of Hawaii [Hawai'i]*, 74 Haw. 308, 316–17, 844 P.2d 670, 675 (1993) (quoting *State v. Rabe*, 5 Haw.App. 251, 261, 687 P.2d 554, 561 (1984)). Because HRE Rule 1006 directs that the party opposing the introduction of a summary be afforded the opportunity to review the underlying documents, there can be only one correct application of the rule. Thus, the trial court's ruling on an objection to the summary's admission under HRE Rule 1006 is subject to review on appeal under the "right/wrong standard." *See Kealoha*, 74 Haw. at 319, 844 P.2d at 676.

The record does not indicate, and it does not appear from a review of the hearing transcript, that Guarantors were afforded a reasonable opportunity to examine the records used in creating the summary. On appeal, Creditor does not argue that Guarantors had such an opportunity. Because that exhibit contained the data bearing upon the

amount owed, we believe, under the particular circumstances of this case, that the matter should be remanded in accordance with the instructions below for a determination by the circuit court of whether Guarantors did have that opportunity.

### III.

After the proof hearing, the court filed Findings of Fact, Conclusions of Law, and an Order Granting Default Judgment Against Guarantors on August 30, 1991, concluding that Guarantors "executed a Guarantee for Lease of Premises obligating themselves as surety for the rental ... [from] May 1, 1987 to November 30, 1988[,]" and that Guarantors "owed to [Creditor] $36,153.71 in rents due and unpaid by [Principal Debtor] for the period commencing May 1, 1987 and ending November 30, 1988." The Order entered judgment in the total amount of $41,043.15 including attorney fees and costs. However, as indicated previously, it is not clear that the proof hearing validly established the amount owed by Guarantors.

Principal Debtor was found liable to Creditor at his trial, which commenced on June 6, 1991, after Guarantors' proof hearing. None of the Principal Debtor's defenses were sustained at trial and his counterclaim against Creditor was dismissed. But we do not believe the judgment filed against Principal Debtor renders Guarantors' appeal moot.

The court at Principal Debtor's trial found that from May 1, 1987 to September 30, 1989 "the amount due [from Principal Debtor] for rent and other charges totalled $106,260.17." Principal Debtor "paid $33,799.35 towards rent and other charges ... for a balance due as of September 30, 1989 of $72,460.82." But the findings do not indicate what portion of such payments by Principal Debtor were attributable to or were attributed to rents due from May 1, 1987 to November 30, 1988, the period under guaranty by Guarantors. Accordingly, the amount owed by Guarantors to Creditor has yet to be conclusively determined.

### IV.

Under the specific circumstances of this case, the matter is remanded and the circuit court shall determine whether Guarantors had the opportunity to review the documents underlying the summary, Plaintiff's Exhibit 4, prior to the proof hearing. If Guarantors did not have such an opportunity, the court shall hold a new proof hearing on the issue of damages and enter a new judgment accordingly. If Guarantors had such an opportunity, then the trial court's Judgment entered against Guarantors on November 18, 1991 is affirmed.

### MOTION FOR RECONSIDERATION AND ORDER OF MODIFICATION

A Motion for Reconsideration of our opinion dated September 27, 1994, was filed by Plaintiff-Appellee Kam Fui Trust (Plaintiff) on October 7, 1994. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 40(c), on October 11, 1994, we ordered Defendants-Appellants Gloria Brandhorst and Glenn Brandhorst (Defendants) to file an answer to Plaintiff's Motion for Reconsideration by October 13, 1994. Defendants have failed to respond.

Our opinion remanded the case to the circuit court for a determination of whether Defendants, who were guarantors on a lease, had the opportunity to examine the documents underlying a summary of payments and charges establishing their liability, under Hawai'i Rules of Evidence Rule 1006.

While not stating that all of the documents underlying the subject summary were disclosed to Defendants, Plaintiff's motion contends that "there was no reason why [Plaintiff] would fail to give [Defendants] and their first attorney every scrap of paper...." For this contention, Plaintiff cites to the record. But the record only contains a certification of the service of Plaintiff's response to Defendant's "first" request for production of documents. The record contains no indication of what Plaintiff's response was, or what, if any documents were produced. Nevertheless, Defendants having failed to file an answer to Plaintiff's reconsideration mo-

tion, Plaintiff's request for affirmance is uncontested.

Accordingly, pursuant to HRAP Rule 40(d), we reconsider our order of remand and modify the opinion by ordering that the trial court's Judgment entered against Defendants on November 18, 1991, be and is hereby affirmed.