Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000704
21-JUN-2024
07:50 AM
Dkt. 736 MO

NO. CAAP-19-0000704

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


In the Matter of the Application of
PIONEER MILL COMPANY, LIMITED,
to register title and confirm its title to land situate at
Lāhainā, Island and County of Maui, State of Hawaiʻi,
and
KAHOMA LAND LLC,
Substituted Applicant as to Lots 1, 2 and 3A

APPEAL FROM THE LAND COURT OF THE STATE OF HAWAIʻI
(LD. CT. APP. NO. 439 amended; LD. CT. CASE NO. 09-0300)

MEMORANDUM OPINION
(By: Leonard, Acting Chief Judge, McCullen, J.; and
Circuit Judge Wong, in place of Hiraoka, Wadsworth,
Nakasone, and Guidry, JJ., all recused)

Respondents/Appellants/Cross-Appellees Gladiola Aloha Schneider, *et al.* and Non-Party-Individual/Appellant/Respondent/ Appellant/Cross-Appellee June Kaulana Prescott-Ahina (**Prescott-Ahina**) (**Schneider Parties**); self-represented Respondents/Cross-Appellants Maltbie K. Napoleon (**Napoleon**) and Edward P. Kakalia (**Kakalia**); and Respondents/Appellees/Cross-Appellants Heirs of Kilinahe (**Heirs of Kilinahe**) (collectively, **Appellants**), appeal from two Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 54(b)- certified amended decrees, (1) the May 27, 2020 Amended Decree No. 2016 concerning certain land situated at Lāhainā, Maui, known

as Lots 1 and 2 (**2016 Amended Decree**), and (2) the May 27, 2020 Amended Decree No. 2017 concerning certain land situated at Lāhainā, Maui, known as Lot 3A (**2017 Amended Decree**), entered by the Land Court of the First Circuit (**Land Court**),[1] in favor of Substituted Applicant-Petitioner/Appellee/Cross-Appellee Kahoma Land LLC (**Kahoma**).[2]  The 2016 Amended Decree declared Kahoma the owner in fee simple in Lot 1 and Lot 2, as described therein. The 2017 Amended Decree declared Kahoma the owner in fee simple to a 78.704% interest in Lot 3A.

Appellants also challenge the Land Court's September 24, 2019 Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)] Regarding Orders Filed on February 13, 2018 and May 2, 2018 (**FOFs and COLs**).

I.    BACKGROUND

This appeal arises out of an application to register title to land in Lāhainā, first asserted by Pioneer Mill Company, Limited (**Pioneer Mill**) over a century ago.[3]  On June 28, 1919, Pioneer Mill filed Petition no. 439 (the **Application**) with the Land Court, seeking to register and confirm fee simple title to certain land parcels in the District of Lāhainā, Island and County of Maui, Territory of Hawai'i, as follows:  (1) the whole

---

[1]    The Honorable Gary W.B. Chang presided.

[2]    Appellants' notices of appeal were filed after entry of the Circuit Court's September 24, 2019 Decree No. 2017 and September 24, 2019 Decree No. 2016.  However, as discussed *infra*, the appealable final orders are the Amended Decrees.

[3]    In unchallenged FOFs and COLs, the Land Court found that "[i]n 1918, Pioneer Mill stock, held by H. Hackfeld and Co., Ltd., was seized by the federal government and sold shortly thereafter.  During this process, Pioneer Mill retained ownership of the plantation property and the operations of Pioneer Mill were carried on by the federal Trustee."

of "Puou," a portion of Apana 2 of Land Commission Award 8520 to J. Kaeo (104.5 acres) (**Lot 1**);  (2) three-eighths of "Kuholilea," a portion of Apana 26 of Land Commission Award 6559-B to W.C. Lunalilo (166.5 acres) (**Lot 2**); and (3) the whole of "Kuhua", a portion of Land Commission Award 7582 to E. Kipa (**Lot 3A**); "Aki," a portion of Land Commission Award 11216 to Kekauonohi, and Grant 3584 to P. Isenberg and C.F. Horner (**Lot 3B/3C**), and "Puuki," part of Land Commission Award 11292 to Mamaki (**Lot 3D/3E**) (together, 1,529 acres).

On July 8, 1919, pursuant to Revised Laws of Hawaiʻi §§ 3143 (1915) and 3161 (1915),[4] the Land Court referred Pioneer Mill's Application to the Surveyor of the Territory of Hawaiʻi.

On December 16, 1919, examiner Arthur G. Smith filed his report in the Land Court, and concluded that Pioneer Mill had good paper title to all of Lot 1 in fee simple absolute and a three-eighths portion of Lot 2 in fee simple, as alleged in the Application.  However, the examiner determined that Pioneer Mill did not have good paper title to Lot 3A, but may have title to Lot 3A by prescription.  Pioneer Mill elected to proceed with the Application to register title to all three parcels despite the adverse examiner's report concerning Lot 3A.

In June 1920, the Land Court ordered notice of Pioneer Mill's Application by registered mail and publication in the Wailuku Times.  Five respondents appeared following publication, and filed answers to the Application:  (1) Thomas Duncan (claimed

---

[4]    These statutes are presently codified at Hawaii Revised Statutes (**HRS**) §§ 501-11 (2018) and 501-32 (2018), respectively.

3

ownership to 1/3 of all land in Pioneer Mill's application); (2) The Territory of Hawaiʻi (claimed ownership to Lot 3); (3) Titus Napoliona (aka Titus Napoleon) (claimed Pioneer Mill had no title to Lots 2 and 3); (4) Mrs. J.H.S. Kaleo (claimed Pioneer Mill had no title to Lots 2 and 3); and (5) Kaneikolia (W) (claimed Pioneer Mill had no title to Lots 2 and 3).

On September 23, 1920, the Land Court entered default against all parties who failed to respond to Pioneer Mill's Application by July 3, 1920.

Between 1920 and 1935, various non-dispositive motions were filed with the Land Court.  Between June 1, 1935, and November 19, 1935, and again on July 18, 1941, ten additional respondents appeared and moved to re-open the September 23, 1920 default.[5]

In 1961, Pioneer Mill merged into American Factors, Ltd., and became Pioneer Mill Co., Ltd.  American Factors, Ltd., transferred the assets of Pioneer Mill to a newly-formed entity, Pioneer Mill Company, Ltd., by Assignment and Agreement recorded in the Bureau of Conveyances of the State of Hawaiʻi.

Between 1935 and 1965, further non-dispositive motions were filed with the Land Court, but the case was largely inactive.  On March 2, 1965, the State of Hawaiʻi (**State**), by and through its Attorney General, moved the court to set Pioneer Mill's Application for trial.  The State's motion came before the Honorable Samuel P. King (**Judge King**) on April 23, 1965.  It

---

[5]     It appears that the Land Court dismissed some of these parties on September 25, 1967.

appears that in July 1965, the court re-opened the 1920 default, and published notice of a return date of August 31, 1965, for all challengers to Pioneer Mill's Application.  On August 31, 1965, several respondents appeared at the return hearing before Judge King.  On September 30, 1965, Judge King entered a special default against all parties who initially appeared but failed to participate further in the proceedings.  On June 6, 1966, Judge King set aside the default against the Estate of John Mamaki and the Estate of Mary K. Sylva (aka Mary M. Brown), allowing them to appear as respondents.

Further proceedings on the Application began on September of 1967.  At this point, the parties contesting Pioneer Mill's Application were the State, Lucy Moeikauhane, *et. al*, Titus Napoleon, *et. al.*, Chun Fook, *et. al.*, and the Estates of Mary M. Brown and John Mamaki.  The challengers only claimed an interest to land in Lot 3 and did not dispute Pioneer Mill's claims to Lots 1 and 2.  On September 25, 1967, Judge King dismissed Lucy Moeikauhane's and Chun Fook's claims with prejudice.  A trial began on September 25, 1967, and concluded on November 1, 1967.  On November 15, 1967, Judge King rendered an oral decision determining that Pioneer Mill had unquestioned title to Lots 1 and 2, but did not have registrable title to Lot 3.  However, Judge King allowed Pioneer Mill to amend the Application and map as to Lot 3.  On March 13, 1970, Judge King

entered his Decision, concluding that Pioneer Mill was the owner in fee simple of the lands designated Lots 1, 2, 3A, 3B, and 3C.[6]

The Estates of Mary K. Brown and John Mamaki and the State appealed the March 13, 1970 Decision.  On May 25, 1972, the Hawaiʻi Supreme Court vacated the March 13, 1970 Decision and remanded the case to the Land Court on the grounds that Judge King had no power to execute the Decision because he forfeited his judgeship upon publicly announcing his intention to seek public office on February 3, 1970.  See In re Pioneer Mill Co., 53 Haw. 496, 497 P.2d 549 (1972).

Following the remand, on October 25, 1993, Pioneer Mill and the State entered into a Disclaimer and Stipulation, whereby the State disclaimed any and all interest in and to Lots 1, 2, 3A, 3B, and 3C, and stipulated that Pioneer Mill had title proper for registration to Lots 1, 2, 3A, 3B, and 3C.  Roughly seven years later, Pioneer Mill transferred Lots 1, 2, 3A, 3B, and 3C to Kahoma via Deeds dated August 28, 2000.  On August 26, 2009, the Land Court granted Kahoma's motion to be substituted for Pioneer Mill as applicant to Lots 1, 2, and 3A.

On November 2, 2009, Kahoma filed a Motion for Default Judgment as to Lots 1, 2, and 3A.  On December 15, 2009, the Land Court entered an Order for Publication of Intent to Grant Kahoma's Motion for Default Judgment as to Lots 1, 2, and 3A, ordering publication in the Honolulu Advertiser and the Maui News

---

[6]     Judge King ordered that the description of Lot 3 be amended and that Lot 3 be divided into Lots 3A, 3B, 3C, 3D, and 3E.  The State of Hawaiʻi Surveryor, Kazutaka Saiki, amended the Application map on April 16, 1970, pursuant to the court's order.

once per week for four successive weeks.  Following publication, multiple parties filed memoranda in opposition to Kahoma's Motion for Default Judgment.

On October 21, 2010, the Land Court denied Kahoma's Motion for Default Judgment, and ordered all interested persons to file a claim of interest by November 1, 2010.  Multiple parties timely filed claims of interest by the court's deadline. On April 19, 2011, Kahoma moved to default any person who did not file a claim by the court's November 1, 2010 deadline.  On August 3, 2011, Kahoma moved for summary judgment as to Lot 1.  The court granted Kahoma's motion for summary judgment as to Lot 1 on October 26, 2011, but denied Kahoma's request for HRCP Rule 54(b) certification.  On November 15, 2011, the Land Court granted Kahoma's motion for default with respect to persons who did not file a claim by November 1, 2010, as to all except four persons.

Kahoma moved for summary judgment to confirm its title to Lot 2 on July 30, 2012, which the Land Court granted on January 16, 2013, determining that respondents did not present evidence raising a genuine issue of material fact as to Kahoma's title to Lot 2.  No respondent presented evidence or inference that they had a colorable claim of title to Lot 2.

On January 17, 2017, Kahoma moved for an entry of a decree confirming its title to an undivided 78.704% interest in Lot 3A.  The motion sought a default judgment against the cumulative interest of all non-appearing heirs of Charles Kanaina (78.704%) (referred to as the **Defaulted Heirs**), while excluding

7

the cumulative interest of the appearing respondents claiming an interest under the heirs of Charles Kanaina (21.296%).

On May 17, 2017, the Land Court granted in part and denied in part Kahoma's motion for a decree as to 78.704% of Lot 3A.  The court granted Kahoma's motion against the Defaulted Heirs, but denied Kahoma's registration of ownership of Lot 3A without prejudice, subject to a determination of Kahoma's interest in and to Lot 3A.  On May 26, 2017, Kahoma filed a motion to allow for an interlocutory appeal from the court's May 17, 2017 order, which the court denied on July 18, 2017.  Apparently at the Land Court's suggestion, on July 21, 2017, Kahoma filed a Motion for Reconsideration of the court's May 17, 2017 order.

On February 13, 2018, the Land Court granted Kahoma's motion for reconsideration and entered judgment in favor of Kahoma as to 78.704% of Lot 3A.  Respondents Heirs of Kilinahe, Napoleon, and Kakalia moved for reconsideration of the court's February 13, 2018 default judgment, but the court denied the motions because they did not meet any of the criteria for reconsideration.

On September 24, 2019, the Land Court issued its FOFs and COLs, which state, in pertinent part:

> **I. Findings of Fact**
>
> . . . .
>
> **B. LOT 3A's PAPER TITLE STATUS**
>
> 1.  Eseta Kipa obtained Land Commission Award 7582 on March 31, 1855, portions of such award are now known as Lot 3A.
>
> 2.  Upon Eseta Kipa's death, title to all lands in her estate vested in her sole heir, Levi Haalelea.

3. Levi Haalelea deeded portions of Eseta Kipa's estate to others, and devised the remainder to two devisees: (1) Charles Kanaina and (2) Hazaleleponi K. Kapakuhaili, who subsequently deeded her interest to Charles Kanaina.

4. Charles Kanaina died intestate in 1877.

5. By Order dated September 15, 1882 filed in First Circuit Court Probate No. 2426, Charles Kanaina's heirs, and their undivided interest in his estate, were identified as follows:

| | | |
|---|---|---|
| 2/9th | Bernice Pauahi Bishop | |
| 1/9th | Ruth Keelikolani | |
| 1/9th | Hana Lilikalani, Edward Lilikalani, and Naihe | |
| 1/9th | A.W. Haalilio, Levi Haalelea and Kahuakaiola | |
| 1/9th | Pahau | |
| 1/9th | Kaaua | |
| 1/9th | Heirs of Kilinahe | |
| | 1/36th | **KAIAPOEPOE** (=2.777%) |
| | 1/36th | Nahuhuleua & Namilimili, wife and husband |
| | 1/36th | **NAMAKALELE** (=2.777%) |
| | 1/36th | **PUAHI** (=2.777%) |
| | | 1/9th Heirs of unidentified person |
| | 1/45th | **KAHONU** (=2.222%) |
| | 1/45th | Kukahiko |
| | 1/45th | Heirs of Kaupae |
| | | 1/135th **PAMAHOA** (=0.741%) |
| | | 1/135th Kaneikolia |
| | | 1/135th Maele |
| | 1/45th | Heirs of Kaeakamahu: Kaupae, Kalepa, Maihui |
| | 1/145th | Kamakamohaha |

6. There is no conveyance of Lot 3A from Charles Kanaina's estate.

7. Descendants of the names in bold above, namely Kaiapoepoe, Namakalele, Puahi, Kahonu, and Pamahoa, appeared in this Application and filed claims of interest.

8. Additional individuals appeared in this Application, claiming to be descendants of Sara Kahukuakoi, and alleged that Sara Kahukuakoi was a 10th heir of Charles Kanaina, notwithstanding the Order dated September 15, 1882.

9. Kahoma's Motion excluded the interests claimed by the Respondents who have appeared in this Application, including the descendants of Sara Kahukuakoi, for a combined amount of 21.296% in Lot 3A.

10. Kahoma's claim to Lot 3A is limited to the interest held by those Charles Kanaina heirs who failed to appear in this Application and have been defaulted (hereinafter, the "defaulted Charles Kanaina heirs"). No interest claimed by any person appearing

9

herein as an heir of Charles Kanaina is affected by Kahoma's Motion or this decision.

11.  No one has objected to or challenged Kahoma's calculation of the defaulted Charles Kanaina heirs' excluded interest.

**C. ADVERSE POSSESSION OF LOT 3A**

1.  Kahoma claims title to Lot 3A by virtue of Pioneer Mill's adverse possession for a ten year period prior to filing the Application in 1919.

2.  Pioneer Mill had color of title to Lot 3A as shown by paper title to neighboring Lot 1 and Lot 2 of this Application, a lease of adjoining Wahikuli lands, and by Deed from P. Isenberg and C.F. Horner, dated June 29, 1895, in which P. Isenberg and C.F. Horner granted, bargained, sold, conveyed, assigned, transferred and set over to Pioneer Mill "all and singular the lands, tenements, and hereditaments situate on the Island of Maui and forming and comprising the present so called 'Pioneer Mill' . . . more particularly set forth and mentioned in the several deeds and leases described and set forth in the Schedule hereto annexed, and also all other lands, tenements and hereditaments if any, forming and comprising the said Pioneer Mill property or any part thereof."

3.  Pioneer Mill's adverse possession - shown by the exhibits in the record and the testimony of John T. Moir Jr. - commenced prior to 1900 and continued after this Application was filed on June 28, 1919, a period of time exceeding the 10 year statutory period to establish title by adverse possession.

. . . .

15.  This evidence establishes as a matter of law that title to Lot 3A vested in Pioneer Mill by adverse possession.

. . . .

III. **Conclusions of Law**

. . . .

**B.  ADVERSE POSSESSION**

1.  "It is well established that one claiming title to real property by adverse possession must bear the burden of proving by clear and positive proof each element of actual, open, notorious, hostile, continuous, and exclusive possessin for the statutory period." Morinoue v. Roy, 86 Hawaiʻi 76, 81, 947 P.2d 944, 949 (1997) (citations omitted).

. . . .

14.  Pioneer Mill's possession of Lot 3A was under color of title, as shown by paper title to neighboring Lot 1 and Lot 2 of this Application, a lease of adjoining Wahikuli lands, and a Deed dated

June 29, 1895, in which P. Isenberg and C.F. Horner granted, bargained, sold, conveyed, assigned, transferred and set over to Pioneer Mill "all and singular the lands, tenements, and hereditaments situate on the Island of Maui and forming and comprising the present so called 'Pioneer Mill' . . . more particularly set forth and mentioned in the several deeds and leases described and set forth in the Schedule hereto annexed, and also all other lands, tenements and hereditaments if any, forming and comprising the said Pioneer Mill property or any part thereof."

**C. APPEARING RESPONDENTS' LACK OF STANDING TO REFUTE TITLE**

1.   Defaulted parties are precluded from making any further defense and have no standing to contest factual allegations of plaintiff's claim.  Kam Fui Trust v. Brandhorst, 77 Haw. 320, 324-25, 884 P.2d 383, 387-88 (App. 1994); 10A Wright & Miller, et. al., Fed. Prac. & Proc. Civ. §2688.1 (4th ed.)

2.   Charles Kanaina's defaulted heirs are precluded from presenting evidence to refute Kahoma's claim.

3.   "[A] defendant may not defeat plaintiff's case by showing that although he has no title in himself, one who is not a party to the action ha[d] a title superior to that relied on by the plaintiff." Alexander & Baldwin, Inc. v. Silva, 124 Hawaiʻi 476, 482, 248 P.3d 1207, 1213 (App. 2011) (citing Harrison v. Davis, 22 Haw. 465, 466 (1915)).

4.   Similarly, the Respondents in this Application are precluded from defending title to lands in which they have no claim.

5.   Kahoma's Motion explicitly excluded the Respondents' claim to title by descent.

6.   Respondents are precluded from defending title of Charles Kanaina's defaulted heirs.

7.   However, Respondents may quiet title to their claimed portion of Lot 3A in another forum.

Also on September 24, 2019, the Land Court entered the 2016 Decree, declaring Kahoma the owner in fee simple of a 100% interest in Lot 1 and (the 3/8 portion of) Lot 2, and the 2017 Decree, declaring Kahoma the owner in fee simple of a 78.704% interest in Lot 3A.  Appellants appealed.

On April 27, 2020, this court entered an order pursuant to HRS § 602-57(3) (2016), temporarily remanding the case with

instructions.  On May 27, 2020, the Land Court entered the 2016 and 2017 Amended Decrees.

II.  <u>POINTS OF ERROR</u>

This appeal includes multiple cross-appeals.  Some of the points of error are raised in multiple briefs.

The Schneider Parties, Heirs of Kilinahe, and Kakalia all appear to contend that the Land Court erred in failing to conduct the new trial that the supreme court ordered in 1972.

The Schneider Parties and Heirs of Kilinahe contend that the Land Court erred in:  (1) concluding that a co-owner cannot defend the interest of his or her co-owners in commonly-owned land against a common enemy who asserts an adverse claim to the commonly-owned land; (2) denying Appellants' motion to exclude the prior testimony of John Moir, Jr. and John Cline Mann, witnesses in the 1967 trial; (3) failing to rule on Appellants' objection to the admissibility of the evidence that Kahoma presented in support of its motion to register an undivided 78.704% interest in Lot 3A; (4) denying Appellants' motion to dismiss Pioneer Mill's Application due to delays in the prosecution of the case; (5) treating the default of Charles Kanaina's non-appearing heirs as an act that operates to convey or assign their "paper title" interest in Lot 3A to Kahoma; (6) failing to apply the summary judgment standard to Kahoma's motion to register a 78.704% interest in Lot 3A; (7) allowing Kahoma, without an amendment, to proceed on a new "hybrid" claim to 78.704% of Lot 3A after initially claiming all of Lot 3; and (8)

12

entering FOFs I.A.19, I.C.2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, and 15 and the resulting COLs III.A.4, III.B.8, 9, 10, 12, 13, 14, III.C.3, 4, 5, and 6.

The Schneider Parties contend that the Land Court erred in defaulting Prescott-Ahina.

The Heirs of Kilinahe contend, in their point of error J, that the Land Court erred in allowing Kahoma to "prevent to the filing" of their answer and counterclaim without a trial to force Kahoma to prove its right to adverse possession to Lots 1, 2 and 3A.  In this point of error, the Heirs of Kilinahe do not state where in the voluminous record of this case the alleged error occurred or where in the record the alleged error was brought to the Land Court's attention.  This point will be disregarded.  See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4).[7]

Kakalia further appears to contend that:  (1) the Alien Property Custodian seized Pioneer Mill in 1918, thereby breaking the chain of adverse possession; (2) the Land Court erred in awarding title to Lots 1, 2, and 3A to Kahoma because Kahoma did not obtain legal interest to Lots 1, 2, and 3A from Pioneer Mill; (3) the Land Court erred in allowing the new Pioneer Mill Co. to replace the old Pioneer Mill Company following the 1961 merger because the new Pioneer Mill did not properly inform the court it

---

[7]     We nevertheless note that Appellants appeared as parties and filed objections to the disposition of Kahoma's motion for default judgment as to the 78.704% interest in Lot 3A, as well as objections to Kahoma's motion for reconsideration.

entered Application No. 439; (4) Kahoma did not provide representation or warranty of any kind when it revealed that it had received a conveyance to Lots 1, 2, and 3 from Pioneer Mill; and (5) the Land Court erred in not dismissing the Application for failure to prosecute after multiple periods of dormancy.[8]

III. APPLICABLE STANDARD OF REVIEW

Although numerous issues were raised on appeal, this court's decision is primarily grounded in the issue of whether Appellants have standing to challenge the decrees entered in favor of Kahoma and against the Defaulted Heirs.

"[T]he issue of standing is reviewed de novo on appeal." Tax Found. of Haw. v. State, 144 Hawai'i 175, 185, 439 P.3d 127, 137 (2019).

> Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated.  And the crucial inquiry in its determination is "whether the plaintiff has 'alleged such personal stake in the outcome of the controversy' as to warrant his invocation of ... (the court's) jurisdiction and to justify exercise of the court's remedial powers on his behalf."

Id. at 196, 439 P.3d at 148 (quoting Life of the Land v. Land Use Comm'n of Haw., 63 Haw. 166, 172 & n.g, 623 P.2d 431, 438 & n.5 (1981)).

---

[8]  Kakalia's opening brief is not in compliance with HRAP Rule 28(b). Kakalia's opening brief does not contain a concise statement of the points of error or where the points of error were objected to, HRAP Rule 28(b)(4), does not contain appropriate record citations in his argument, HRAP Rule 28(b)(7), and does not provide a concise statement of the case, HRAP Rule 28(b)(3). However, *pro se* litigants should not automatically have their appellate review foreclosed because of failure to conform to procedural requirements, and therefore we will liberally construe Kakalia's brief to the extent possible. See Erum v. Llego, 147 Hawai'i 368, 380-81, 465 P.3d 815, 827-28 (2020).

IV.  DISCUSSION

    A.  Lots 1 and 2

        Although the Schneider Parties and Heirs of Kilinahe appeal from the 2016 Amended Decree, they do not present any arguments challenging the 2016 Decree.  In their reply brief, the Schneider Parties confirm that they do not challenge the 2016 Decree (Lots 1 and 2), and only challenge the 2017 Decree (Lot 3A).  The Heirs of Kilinahe similarly make no arguments that the Land Court erred in entering the 2016 Amended Decree.

        While Kakalia appears to present arguments on appeal concerning Kahoma's title to Lots 1 and 2, in the Land Court proceedings, Kakalia only claimed an interest in Lot 3A. Therefore, Kakalia has waived any challenge to the 2016 Amended Decree.

    B.  Default of Prescott-Ahina

        The Schneider Parties argue that the Land Court erred in entering default against Prescott-Ahina, as one of the potential claimants who did not file a claim by November 1, 2010. The Schneider Parties do not cite to where in the record they moved to set aside the default against Prescott-Ahina or where Prescott-Ahina otherwise brought this alleged error to the attention of the Land Court.  Although the record is voluminous, it does not appear that the Schneider Parties' attorney ever entered an appearance in the Land Court on Prescott-Ahina's behalf or that she appeared *pro se*.  The Schneider Parties do not cite to any authority in support of their argument that the

15

court's published notice was insufficient or that she should be allowed to raise this issue for the first time on appeal.  We conclude that this argument is without merit.

C.    Standing to Defend Title of Defaulted Parties

The Land Court concluded that Appellants are precluded from defending the title of the Defaulted Heirs because Appellants have no title to the land in question, and a defendant may not defeat a plaintiff's case by showing that although the defendant has no title, a party not involved in the action has a superior title than plaintiff.  The Schneider Parties and the Heirs of Kilinahe argue that the Land Court erred in determining that a co-owner cannot defend the interest of another co-owner against a common adversary who asserts an adverse claim to the commonly-owned land.[9]  Appellants further argue that the court's decision effectively allowed Kahoma to destroy the "unity of possession" between Appellants and the Defaulted Heirs and "take" the 78.704% undivided interest of the Defaulted Heirs, resulting in inconsistent outcomes.  Appellants do not dispute that they themselves have no claim to the 78.704% interest in Lot 3A that was awarded to Kahoma in the Amended 2017 Decree.  Appellants' claim to title in the 21.296% interest in Lot 3A was explicitly excluded from Kahoma's motion for default judgment.

_____

[9]    Only the Schneider Parties and the Heirs of Kilinahe make arguments concerning an alleged error by the Land Court in finding that respondents could not defend the purported interest of Charles Kanaina's defaulted heirs in 78.704% of Lot 3A.  However, this particular standing issue applies to all Appellants.

Appellants cite to Frow v. De La Vega, 82 U.S. 552 (1872), and argue that the Land Court's determination that Appellants lack standing to defend the Defaulted Heirs title would go directly against the Frow principle.  The general rule from Frow is that "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted."  Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 147 (10th Cir. 1985) (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2690, 455–56 (1983)).  Frow is inapplicable to the current case.

In Frow, Plaintiff De La Vega (**De La Vega**) brought an action against Frow and other defendants asserting *joint* charges against them of conspiracy and fraud.  82 U.S. at 552-53.  All defendants timely answered the complaint except Frow, and the court entered a default judgment and permanent injunction against Frow.  Id. at 553.  On the merits of the cause against the other defendants, the trial court decided against De La Vega and dismissed the complaint against them.  Id.  Frow appealed.  Regarding Frow's default judgment, the United States Supreme Court determined that:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow:  there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill.

17

Id. at 554.  The Supreme Court continued, stating that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."  Id.  This holding was in reference to the allegation of a joint conspiracy to defraud De La Vega.

The absurd result that Frow seeks to protect against, conflicting judgments against jointly liable defendants, is not implicated in this case.  Indeed, under Hawaiʻi law, a claimant can seek to quiet title based on adverse possession of a fractional share of a parcel of land.  See, e.g., Pebia v. Hamakua Mill Co., 30 Haw. 100, 112-113 (Haw. Terr. 1927); Hana Ranch, Inc. v. Kanakaole, 1 Haw. App. 573, 577, 623 P.2d 885, 888 (1981).  Thus, the relief against the Defaulted Heirs does not violate the Frow principle.

Appellants also argue that Waimea Falls Park, Inc. v. Brown, 6 Haw. App. 83, 712 P.2d 1136 (1985), and Godfrey v. Rowland, 17 Haw. 577 (Haw. Terr. 1906), support the proposition that co-owners have standing to defend the interests of all owners of commonly-owned land, even those co-owners who have defaulted.  That issue simply was not before this court (the ICA) in Waimea Falls Park and therefore, the court did not decide the issue.  The ICA did not, as suggested by Appellants here, allow the appellant in that case to assert or defend the interest of a purported co-owner.  Waimea Falls Park, Inc., 6 Haw. App. at 98, 712 P.2d at 1146.  Rather, the ICA concluded that Waimea Falls Park failed to properly name a necessary party (Lucy Joseph), and

18

therefore vacated the judgment in Waimea Falls Park's favor and remanded the case to allow Waimea Falls Park to join Lucy Joseph's estate or heirs in a quiet title action.  Id. at 100, 712 P.2d at 1148.

Similarly, Godfrey does not support the proposition that an alleged title holder may defend the alleged ownership interest of a defaulted party who is purportedly a co-owner. Rather, the supreme court held that, in ejectment, where the objective is to recover possession from a stranger, one co-owner can act without needing to join the other co-owners.  17 Haw. at 588.  Godfrey is inapposite.

It is well-established in Hawaiʻi that a respondent may not defeat a petitioner's claim to title by showing that even though they have no title, a third party not in the action has superior title to the petitioner.  See Alexander & Baldwin, Inc. v. Silva, 124 Hawaiʻi 476, 482, 248 P.3d 1207, 1213 (App. 2011) ("Harrison II also held that the defendant may not prevent the plaintiff from quieting plaintiff's title, except by demonstrating that the defendant's title is superior to the plaintiff's title, i.e., the defendant may not defeat the plaintiff's claim by relying on evidence of a third-party's superior title.") (citing Harrison v. Davis, 22 Haw. 465, 466 (Haw. Terr. 1915)); Kau Agribusiness Co., Inc. v. Heirs or Assigns of Ahulau, 105 Hawaiʻi 182, 188, 95 P.3d 613, 619 (2004) ("Stenders cannot argue that the bill may not be granted for the Plaintiffs simply because third parties, i.e., Waiola K. Pai's

descendants, may have a right to title of the property."); <u>Hana</u> <u>Ranch, Inc.</u>, 1 Haw. App. at 577, 623 P.2d at 888 ("It is possible that there may be other persons having an interest in the Kapule share of the property in question through descent from Kapule, the original grantee.  However, the Hokoanas failed to establish that they were such persons.  It is settled in a quiet title action that a defendant cannot set up title in a stranger to defeat the claim."); <u>see</u> <u>also</u> <u>U.S. v. State of Oregon</u>, 295 U.S. 1, 24 (1935) ("A bill to quiet title may not be defeated by showing that the plaintiff's interest, otherwise sufficient to support the bill, is subject to possibly superior rights in third persons not parties to the suit.").

Finally, an entry of default and default judgment are proper against a party that fails to appear after being notified. <u>See</u> HRCP Rule 55.[10]  Here, as mentioned *supra*, the Land Court

---

[10]     HRCP Rule 55 states, in pertinent part:

**Rule 55.  Default.**

**(a)** Entry.  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
**(b)** Judgment.  Judgment by default may be entered as follows:
(1) BY THE CLERK.  When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.
(2) BY THE COURT  In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a guardian, or other such representative who has
(continued...)

ordered publication of Pioneer Mill/Kahoma's Application in 1920, 1965, and 2009.  Over the span of 100 years, no one responded on behalf of the Defaulted Heirs, and default was entered against them three separate times.  Defaulted parties are precluded from offering any further defense in a case, and as discussed above, a party cannot defeat a plaintiff's case by showing that a third party, not a party to the action, allegedly has a superior title than plaintiff's.  See Kam Fui Trust v. Brandhorst, 77 Hawaiʻi 320, 324-25, 884 P.2d 383, 387-88 (App. 1994); see also Alexander & Baldwin, Inc., 124 Hawaiʻi at 482, 248 P.3d at 1213.

Thus, we conclude the Land Court did not err in concluding that Appellants lack standing to challenge the 2017 Amended Decree.[11]  Accordingly, we do not reach the substance of Appellants' further arguments that the Land Court erred in entering the 2017 Amended Decree.

---

[10] (...continued)
appeared therein, and upon whom service may be made under Rule 17.  If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

[11]     Appellants claim a cumulative 21.296% title in Lot 3A.  The ownership of that fractional share of Lot 3A remains unresolved.  Either party can seek to quiet the title to remaining 21.296% of Lot 3A.

IV.   CONCLUSION

For these reasons, the Land Court's 2016 Amended Decree and 2017 Amended Decree are affirmed.

DATED: Honolulu, Hawaiʻi, June 21, 2024.

| | |
|---|---|
| On the briefs: | /s/ Katherine G. Leonard<br>Acting Chief Judge |
| Edward P. Kakalia,<br>Respondent/Cross-Appellant<br> *Pro Se.* | /s/ Sonja M.P. McCullen<br>Associate Judge |
| Michael J. Matsukawa,<br>for Appearing Respondents-<br> Appellants (Decree No. 2017)<br> and Respondents-Appellants<br> (Decree No. 2016) and Cross-<br> Appellees Gladiola Aloha<br> Schneider et al. and Non-Party<br> Individual-Appellant (Decree No.<br> 2017) and Respondent-Appellant<br> (Decree No. 2016) and Cross-Appellee<br> June Kaulana Prescott-Ahina. | /s/ Paul B.K. Wong<br>Circuit Judge |

Michael W. Gibson,
Wayne Nasser,
Benjamin M. Creps,
(Ashford & Wriston),
for Substituted Applicant/
 Petitioner-Appellee/Cross-Appellee
 Kahoma Land LLC.

Gary Y. Shigemura,
for Respondent/Cross-Appellants
 Heirs of Kilinahe.

David B. Kaapu,
for Respondent-Appellants
 Crystal Maile Salausa, Crystal
 Lopes Kakalia, Heirs of Arlene
 Kehaulani Kakalia, and Wilfred Lopes.