**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000065
20-MAY-2025
07:48 AM
Dkt. 133 SO**

NO. CAAP-22-0000065


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


THADDEUS ZIEMLAK,[1] SUCCESSOR TRUSTEE OF THE MARGUERITE M. ZIEMLAK
REVOCABLE LIVING TRUST, Plaintiff-Appellee, v.
JI WON KEELEY, Defendant-Appellant, and
ESTATE OF STANLEY F. ZIEMLAK, aka STANLEY ZIEMLAK,
Defendant-Appellee, and JOHN DOES 1-20, JANE DOES 1-20,
DOE PARTNERSHIPS 1-20, DOE LIMITED LIABILITY COMPANIES 1-20,
DOE CORPORATIONS 1-20, and DOE ENTITIES 1-20, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC121002576)


SUMMARY DISPOSITION ORDER
(By:  Leonard, Acting Chief Judge, Hiraoka and McCullen, JJ.)

Defendant-Appellant Ji Won **Keeley** appeals from the

Circuit Court of the First Circuit's January 28, 2022 "Judgment

on Order Granting Renewed Motion for Judgment by Default"

(**January 28, 2022 Judgment**).[2]

---

[1]  It appears the correct spelling of Plaintiff-Appellee's first name is Thaddeus, rather than Thaddeaus.

[2]  The Honorable James C. McWhinnie presided.

This is the second appeal before this court. In the first appeal, a majority of the court affirmed the clerk's entry of default but vacated the final judgment and entry of default judgment by the clerk. Ziemlak v. Keeley (Ziemlak I), 140 Hawaiʻi 19, 396 P.3d 1157, No. CAAP-14-0001017, 2017 WL 2829277, at *4 (App. June 30, 2017) (SDO). The majority vacated the default judgment because a judicial determination was necessary on damages "for a sum certain." Ziemlak I, 2017 WL 2829277, at *3. The case was thus remanded to determine damages.

On remand, the circuit court calculated the damages as follows:

| | | | |
|---|---|---|---:|
| A. | Purchase of North Carolina Property | | $169,900.00 |
| | Less: 5% of Trust Principal Value | | -22,828.95 |
| | | | 147,071.05 |
| | | | |
| B. | Sale Proceeds of North [Carolina] Property | | $268,705.34 |
| | Less: Purchase of NC Property Amount | | -169,900.00 |
| | Less: Annual Withdrawal of Principal | | -5,000.00 |
| | | | 93,805.34 |
| | | | |
| C. | $100,000 Check made payable to [**Stanley**] F. Ziemlak as Trustee of the Marguerite M. Ziemlak Revocable Living Trust | | $100,000.00 |
| | Less: 5% of Trust's Principal Value | | -14,333.95 |
| | | | 85,666.05 |
| | | | |
| D. | Sub-Total | | **$326,542.44** |
| | | | |
| E. | Legal Rate 10% Interest from January 24, 2013, the date of the Entry of Default [Hawaiʻi Revised Statutes (**HRS**) § 478-2(3) (2008 & Supp. 2024)] | | $261,233.95 |
| | | | |
| F. | Sub-Total | | **$587,776.39** |
| | | | |
| G. | Attorney's Fees and Costs | | $152,852.37 |
| | | | |
| H. | TOTAL AMOUNT OF JUDGMENT | | **$740,628.76** |

On appeal, Keeley challenges (1) the effective assistance of counsel (point of error (**POE**) 1); (2) the denial of her August 6, 2020 Motion to Dismiss for failure to prosecute (POE 7); and (3) the damages awarded (POE 10).[3]

---

[3] Keeley actually raises ten points of error (POE), summarized as follows:

1. By failing to file an application for writ of certiorari, former counsel "deprived Mrs. Keeley of actual meritorious defenses she possessed; and was therefore not very effective assistance of counsel, for that very reason in this case."

2. The "Motion to add FIRST HONOLULU SECURITIES, INC., whom Plaintiff named in the complaint but refused to serve was erroneously denied."

3. The circuit court erred in denying Keeley's counter motion for summary judgment.

4. "Any order of Default [Judgment] should also apply to Defendant FIRST HONOLULU SECURITIES, INC." as "they are the only ones that can be sued for violating the trust[.]"

5. Plaintiff failed to "serve the Personal representative of the deceased Stanley Ziemlak[.]"

6. The circuit court erred in granting in part and denying in part Plaintiff-Appellee **Thaddeus** Ziemlak's motion to strike the January 2, 2022 counterclaim.

7. The circuit court erred in denying Keeley's August 6, 2020 Motion to Dismiss.

8. The circuit court erred "when it ignored her Defenses to suit under the Trust Language itself."

9. The circuit court erred "in interpreting and applying the actual written Trust Articles in the case[.]"

10. "The [Judgment] amount of $740,628.76 is erroneously computed and excessive, given the debt itself stems from claims of improper withdrawals of $165,000 and $100,000 from the Stanley Ziemlak trust . . . ."

(Formatting altered.) Two POE were labeled "5" and, thus, the POE are consecutively renumbered following POE 5.

(continued . . .)

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the issues raised and the arguments advanced, we resolve the points of error as discussed below and affirm.

**(1)** First, Keeley contends her former counsel failed to file a writ of certiorari from this court's decision in Ziemlak I "and was therefore not very effective assistance of counsel[.]"

The denial of effective assistance of counsel is usually raised in the context of a criminal defendant's sixth amendment right to effective assistance of counsel. U.S. Const. amend. VI; Haw. Const. art. I, § 14. Failure to file a timely application for writ of certiorari implicates a criminal defendant's constitutional right to effective assistance of counsel. State v. Uchima, 147 Hawaiʻi 64, 83, 464 P.3d 852, 871 (2020).

However, the "sixth amendment right to counsel applies only to criminal proceedings." Norton v. Admin. Dir. of Ct., 80

---

(. . . continued)

POE 2-6, 8, and 9 challenge decisions related to Keeley's attempt to relitigate her liability arising from the entry of default, which was affirmed in Ziemlak I. See Kam Fui Tr. v. Brandhorst, 77 Hawaiʻi 320, 324-25, 884 P.2d 383, 387-88 (App. 1994) (explaining that an entry of default is an "interlocutory order of the court, the effect of which is to preclude the defendant from making any further defense in the case so far as liability is concerned"). As such, we do not address these points.

Finally, we note that Keeley's reply brief exceeds the page limit, failing to comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(a).

Hawaiʻi 197, 200, 908 P.2d 545, 548 (1995).  Because this case is not a criminal case and Keeley is not a criminal defendant, a criminal defendant's constitutional right to effective assistance of counsel does not apply to Keeley.

Keeley also relies on Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 2, which allows this court to suspend HRAP rules to expedite a decision or for good cause shown:

> In the interest of expediting a decision, or for other good cause shown, either Hawaiʻi appellate court may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction.

Keeley, however, does not identify the rule she wishes we suspend.  These circumstances do not establish grounds for vacating the circuit court's January 28, 2022 Judgment.

**(2)**  Keeley also contends the circuit court erred in denying her August 6, 2020 Motion to Dismiss for lack of prosecution under Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 41(b).

Under HRCP Rule 41(b)(1), an action may be involuntarily dismissed "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of the court[.]"  "What constitutes a failure to prosecute depends on the facts of each case and the court must consider all pertinent

5

circumstances before granting the motion."  Ellis v. Harland Bartholomew & Assocs., 1 Haw. App. 420, 426, 620 P.2d 744, 748 (App. 1980).  Courts apply four criteria in ruling on a Rule 41(b) motion:  "1) the [plaintiff's] degree of personal responsibility . . . ; 2) the amount of prejudice to the defendant caused by the delay; 3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion, and 4) the effectiveness of sanctions less drastic than dismissal."  Id. at 426-27, 620 P.2d at 749 (formatting altered and citation omitted).  "[A]bsent deliberate delay, contumacious conduct or actual prejudice[,] an order of dismissal cannot be affirmed."  In re Blaisdell, 125 Hawaiʻi 44, 48, 252 P.3d 63, 67 (2011) (citations omitted).

In her August 6, 2020 Motion to Dismiss, Keeley alleged "[t]here was a long delay in failing to follow the ICA decision since December 2018 to present, a span of two (2) years."  Plaintiff-Appellee **Thaddeus** Ziemlak on the other hand asserted that Keeley delayed the proceedings after the ICA's 2017 decision by being out of the country and noted that there were talks of settlement.

Following a hearing on the Motion to Dismiss, the circuit court denied the Motion because "the ICA did not vacate the default against Defendant Keeley, that default still

stands[.]"[4]  The circuit court correctly concluded that the default entry against Keeley was affirmed and, thus, Keeley's liability was not subject to a dismissal.

As for litigating damages, Keeley argues that she suffered "legal prejudice" because witnesses were no longer available.[5]  "[O]ur precedent establishes that the actual prejudice a defendant must suffer is actual damage or detriment to the presentation of the defense."  Erum v. Llego, 147 Hawaiʻi 368, 388, 465 P.3d 815, 835 (2020).  Because, as discussed below, factual bases existed for the court's damages award, we cannot say that Keeley suffered actual prejudice in presenting a defense to the determination of damages.

Additionally, Keeley failed to show that any delay after this court's decision in Ziemlak I was dilatory or that less drastic sanctions would be ineffective.  See Ellis, 1 Haw. App. at 426–27, 620 P.2d at 748-49; In re Blaisdell, 125 Hawaiʻi at 49, 252 P.3d at 68 (explaining that "an order of dismissal cannot be affirmed absent deliberate delay, contumacious conduct, or actual prejudice" and that "the dismissal of a complaint with prejudice is such a severe sanction that it should seldom be used" (emphasis, citations, and footnote

---

[4]  The Honorable Bert I. Ayabe presided over the hearing.

[5]  Keeley also argues that she suffered legal prejudice because a lis pendens on her property prevented her from obtaining loans.  But the lis pendens appears to have been related to Keeley's liability, and was not relevant to the determination of damages.

omitted)). Absent such showings, the circuit court did not abuse its discretion when it denied Keeley's motion to dismiss.

**(3)** Finally, Keeley contends the judgment "amount of $740,628.76 is erroneously computed and excessive, given the debt itself stems from claims of improper withdrawals of $165,000 and $100,000 . . . ." Specifically, Keeley challenges (a) two amounts - $98,500 and $100,000, and (b) the interest applied.[6]

**(a)** Keeley challenges the "$98,500 surplus or profit from the sale of the North Carolina house; and the $100,000 check written to directly [sic] Stanley Ziemlak deposited into Stanley Ziemlak's own personal bank account and used by him for his living expenses."

Although Keeley cannot contest the fact of her liability, she may contest the amount of her liability. Kam Fui Tr., 77 Hawaiʻi at 325, 884 P.2d at 388.

Keeley's record citations for the $98,500 figure do not support this amount, and this "court is not required to sift through a voluminous record for documentation of a party's contentions." Int'l Bhd. of Elec. Workers, Loc. 1357 v. Hawaiian Tel. Co., 68 Haw. 316, 332, 713 P.2d 943, 956 (1986).

---

[6] We note that Keeley does not challenge the $152,852.37 award of attorneys' fees and costs, and as such, she has waived any argument against the inclusion of attorneys' fees and costs in the $740,628.76 judgment. HRAP Rule 28(b)(4).

Instead, the record supports the court's determination that the profit from the sale of the North Carolina Property totaled $93,805.34.[7]  The record also includes an image of a $100,000.00 check made out to "Stanley F Ziemlak TR UA 07-20-94 Marguerite M Ziemlak Rev Living Trust," which includes an endorsement signature that Keeley recognized as her own.  (Formatting altered.)

Because the record contains factual bases for the $93,805.34 and $100,000.00 figures, we cannot say the circuit court abused its discretion by including these amounts in the damages award.

**(b)**  Keeley also argues that "interest does not begin to run on a debt until it is reduced to [judgment] and not before entry of the [judgment]."

HRS § 636-16 (2016) "applies in all civil cases, vests a court with discretion to award prejudgment interest[,]" and

---

[7]  The document Keeley identified as the December 15, 2003 Settlement Statement for the purchase of the North Carolina Property indicates she and Stanley were the buyers of the Property, and the "gross amount due from buyer" for the North Carolina Property was $174,900.00.  (Formatting altered.)  A 2007 bank statement Keeley identified as being for the joint account she and Stanley shared shows a $268,705.34 deposit.  Keeley agreed it was "fair to say that the deposit made [into the joint account] on April 19, 2007, in the amount of $268,705.34 was from the sale of the North Carolina property[.]"  The sale price ($268,705.34) less the amount paid ($174,900.00) equals $93,805.34.  Thus, the record supports the circuit court's calculation of $93,805.34 in net sale proceeds for the North Carolina Property.

authorizes the court "to designate the commencement date."[8] Cnty. of Hawaiʻi v. C&J Coupe Fam. Ltd. P'ship, 124 Hawaiʻi 281, 311-12, 242 P.3d 1136, 1166-67 (2010). And HRS § 478-2(3) (2008) allows the court to set interest "at the rate of ten per cent a year" for "money received to the use of another, from the date of a demand made[.]"[9]

Here, the circuit court complied with HRS § 478-2(3) when it ordered prejudgment interest at ten percent, and it was within the circuit court's discretion under HRS § 636-16 to set the commencement date as the date of the entry of default.[10]

---

[8] HRS § 636-16 provides:

> In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

(Emphasis added.)

[9] HRS § 478-2 provides in pertinent part:

> When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year, except that, with respect to obligations of the State, interest shall be allowed at the prime rate for each calendar quarter but in no event shall exceed ten per cent a year, as follows:
>
> . . . .
>
> > (3) For money received to the use of another, from the date of a demand made . . . .

[10] The damages award subtotal equaled $326,542.44. Ten percent of $326,542.44 is $32,654.24. Nine years and four days elapsed from the clerk's January 24, 2013 default entry to the circuit court's January 28, 2022 Order, but the court mistakenly calculated the time elapsed as eight years.

(continued . . .)

Thus, we cannot say the court disregarded rules or principles of law by including prejudgment interest in the damages award.

Based on the foregoing, we affirm the circuit court's January 28, 2022 Judgment.

DATED:  Honolulu, Hawaiʻi, May 20, 2025.

On the briefs:

André S. Wooten,
for Defendant-Appellant.

Kenn N. Kojima,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

---

(. . . continued)

Thaddeus did not object to the missing ninth year of interest, so his claim to an additional $32,654.24 is waived.  Ten percent interest ($32,654.24) each year for eight years totals $261,233.95, the amount of prejudgment interest the court awarded in its January 28, 2022 Order Granting Renewed Motion for Judgment by Default.